# Dixon *v.* The State.

*Indictment for Murder.*

1. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where it is shown that, at the time of the killing, the deceased and the defendant's employer were having an altercation in front of the latter's store, which the State's evidence tended to show was playful, tnat just prior to the killing the defendant was engaged in work on the second floor of the store, and that during the altercation the defendant came down the steps from the second story and fired the fatal shot, it is competent for the State to prove what took place between the deceased and the owner of the store while they were engaged in the altercation, where there is further evidence tending to show that the defendant was at a place on the second floor where he could see and hear what was going on between the said parties.

2. *Same; charge as to malice.*—On a trial under an indictment for murder, where it is shown that the defendant killed the deceased by shooting him with a shot gun, and the evidence for the State tended to show that the killing was intentional, while the evidence for the defendant tended to show that it was accidental, a charge which predicates the defendant's acquittal of either degree of murder upon the jury finding that he fired upon the deceased suddenly, upon seeing him with a pistol pointed at another person, is erroneous and properly refused; since malice may arise on the instant and may be presumed from the use of a deadly weapon, unless the evidence disproves its existence and whether or not the killing in such case was intentional, and if so, whether it was malicious, are questions for the determination of the jury.

3. *Same; charge as to premeditation.*—Premeditation is a neces-
sary ingredient of murder in the first degree, but the length
of time the premeditation existed before the killing is im-
material; and, therefore, a charge which instructs the jury
that before they can convict the defendant of murder in the
first degree they must believe from the evidence the defend-
ant premeditated upon the killing a certain length of time
before he fired the fatal shot, is erroneous and properly re-
fused.

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

The appellant was indicted and tried for unlawfully
and with malice aforethought killing one Willie Hooks
by shooting him with a gun; was convicted of murder in
the second degree and sentenced to the penitentiary for
11 years.

The evidence for the State tended to show that one
W. E. Means owned a store and that the defendant was
in his employment; that said Means and Willie Hooks
the deceased, got to fooling with one another in the
front of the store; that Means playfully struck at Wil-
lie Hooks with a broom with which he was sweeping;
that thereupon Hooks drew a pistol and in a spirit of
fun leveled it at Means; that Means called to some per-
son standing by and told him to bring him a gun or
pistol; that neither Hooks nor the said Means were
angry, but that all that they did was done in a spirit of
playfulness; that the defendant, who was at this time
on the second floor of the store occupied by Means, ran
down the steps which were built on the side of the store
house with a gun in his hands, and as he got to the front
of the store he threw the gun up and fired, killing Willie
Hooks instantly.

The evidence for the defendant tended to show that
the firing of the gun was entirely accidental; that the
defendant did not know the gun was loaded, and that
it was fired while he had it in his hand holding it by his
side.

The defendant as a witness in his own behalf testified
that he was carrying the gun down stairs and had no
intention of killing the deceased.

During the examination of several of the State's witnesses, they testified that although the defendant was up stairs on the second floor of the store, he was at a place where he could see and hear what was going on in front of the store. Several of the State's witnesses were asked during their examination to state what took place between Means and Hooks before the shooting. The defendant objected to each of these questions and moved to exclude the answers of each of the witnesses thereto, upon the ground that it had not been shown that the defendant was present at the time inquired into. The court overruled each of the objections and motions, and to each of such rulings the defendant separately excepted.

On the part of the defendant there was evidence tending to show that while he was up stairs he could not see or hear anything that was taking place between the deceased and Means, and that he did not know of any altercation between them until he came down the steps.

The defendant requested the court to give the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked:
(2.) If you believe from the evidence that defendant did not see or hear anything that took place between Means and Hooks until he (defendant) came down stairs with the gun, but fired suddenly upon seeing Hooks with a pistol pointed at Means, then defendant would not be guilty of murder in either of its degrees, but his crime would be manslaughter in one of its degrees."
(5.) "The court charges you, gentlemen of the jury, that you must believe from the evidence beyond a reasonable doubt that defendant took the gun from the room up stairs with the intention and purpose to take the life of Willie Hooks, or some other person, before you can convict the defendant of murder in the first degree."

No counsel marked as appearing for appellant.

CHAS. G. BROWN, Attorney-General, for the State. The acts and declarations of deceased and Means just before the homicide, whether defendant saw or heard them or not, were admissible as part of the *res gestae*.

*Wesley v. State,* 52 Ala. 187; *Smith v. State,* 52 Ala. 410; *Mattison v. State,* 55 Ala. 224; *Armor v. State,* 63 Ala. 173; *Gibson v. State,* 91 Ala. 69; *Kilgore v. State,* 124 Ala. 24; *Miller v. State,* 107 Ala. 40.

SHARPE, J.—Defendant was tried on a charge of murder based upon the undisputed fact that immediately on coming down stairs from the upper room of a store with a gun in his hand, the gun was fired and killed the deceased who was standing in front of the store handling a pistol and having an altercation either playful or belligerent with one Means, the proprietor of the store, who also was handling a pistol. Defendant by his evidence admitted that the gun fired while in his hands, but claimed the firing was accidental.

Defendant made objections to questions addressed to certain witnesses for the State and to answers thereto, as to what took place between deceased and Means while they were so engaged and before the defendant came down. Of these several objections it is sufficient to say they were not well taken because from the bill of exceptions it appears there was evidence tending to show that at the time of the happening of the things so inquired and testified about the defendant, though up stairs, was at a place where he could both hear and see what was going on. This, if true, was sufficient to make the altercation occurring just before the defendant came down a part of the *res gestae,* if it could not otherwise have been so regarded.—*Wood v. State, ante,* p. 27.

Malice may arise on the instant, and from the use of a deadly weapon whereby one intentionally takes the life of another the law raises a *prima facie* presumption that the killing was done maliciously unless the circumstances of the killing disprove malice.—*Hornsby v. State,* 94 Ala. 55; *Miller v. State,* 107 Ala. 40. Whether the killing involved in the present case was intentional and if so whether it was malicious and, therefore, murder were under the circumstances in evidence questions for the jury, and this made proper the refusal of charge 2.

Charge 5 was also properly refused. Though premeditation as well as malice is a necessary ingredient of

[Carson v. The State.]

murder in the first degree, the length of time the premeditation has existed before the killing is immaterial. *Kilgore v. State*, 124 Ala. 24. It was possible for the defendant to have framed a premeditated as well as a malicious design to kill after taking up the gun and before it was fired.

No error in the record is discovered. Let the judgment be affirmed.