44 So.2d 802

**NELSON v. STATE.**

7 Div. 973.

Court of Appeals of Alabama.
Feb. 28, 1950.

Roberts & Cunningham, of Gadsden, for appellant.

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The indictment against this appellant contained two counts, the first count charging assault with intent to murder, the second count charging assault with intent to rob. .

The verdict returned by the jury found appellant guilty of assault with intent to rob, under count 2 of the indictment.

The evidence presented by the State tended to show that about 9:30 on the night of 5 February 1948, Mr. Benton Pierce, Manager of the Gadsden Theatre, in Gadsden, Alabama, was seated behind the desk in his office, which was on the mezzanine floor of the theatre. The appellant pushed open the partially closed door and entered the office. He thereupon pointed a pistol at Pierce and said: "All right, lets have it."

Pierce stated he merely stared at appellant, whereupon appellant fired the pistol. The bullet went completely through Pierce's chest. Appellant attempted to fire again, but his pistol jammed.

Pierce dived to the floor, grabbing his own pistol from the top of the desk, and using the desk as a shield, fired at appellant, who fled the office.

During his testimony Pierce was positive in identifying appellant as the person who assaulted him on this occasion.

Billy Thomas and Carol Robinson, two employees of the theatre on duty the evening of this occurrence, likewise positively identified appellant, whom they had observed at the theatre on previous times, as being the person they observed running down the stairs from the mezzanine floor, and out of the theatre, immediately after they heard the sound of shots in the office. Appellant held a pistol in his hand as he fled.

A bullet was dug out of the plaster wall behind the chair in which Pierce was seated at the time he was shot. This bullet was recovered by the police who arrived at the scene a few minutes after the shooting. Fresh plaster and dust was on the floor beneath the bullet hole.

This bullet was turned over to the Assistant State Toxicologist, who after ballistics tests testified that this bullet was fired from a gun found by police in a closet in appellant's home, and which gun appellant admitted was owned by him.

The defense evidence was directed toward establishing an alibi. That the jury was unconvinced by the evidence presented in support of this defense is apparent from the verdict.

█ Clearly a question of fact solely within the province of the jury to resolve was presented by all the evidence submitted. Certainly that presented by the State is abundant in its tendencies to support the verdict rendered. The affirmative charge requested by appellant was properly denied.

During the cross-examination of appellant there was elicited from him, over timely objections, supported by various grounds, testimony to the effect that while a member of the United States Navy he had been convicted of the offense of desertion in time of war and sentenced to imprisonment for a term of six years.

Sections 434 and 435, Title 7, Code of Alabama 1940, are as follows:

"§ 434. No objection must be allowed to the competency of a witness because of his conviction for any crime, except perjury or subornation of perjury; but if he has been convicted of a crime involving moral turpitude, the objection goes to his credibility."

"§ 435. A witness may be examined touching his conviction for crime, and his answers may be contradicted by other evidence."

█ Section 435, supra, must be construed in pari materia with Section 434, supra. Lakey v. State, 206 Ala. 180, 89 So. 605.

We have found no case in this jurisdiction relating to the admissibility of a conviction by a general court marital, to effect the credibility of a witness.

Further while there may be other decisions dealing with this point, we have found only two, one decided by the Supreme Court of Arkansas, and the other by the Supreme Court of Arizona.

In 1920, in the case of Jordan v. State, 141 Ark. 504, 217 S.W. 788, 790, the Supreme Court of Arkansas held that it was proper to cross-examine a defendant relative to his conviction by a court martial for desertion, the court stating: "A witness

may be impeached by drawing out of him on cross examination that he has been guilty of acts of moral turpitude, and especially of crime, which reflect upon his integrity or credibility as a witness."

Writing to the same point in 1927 the Supreme Court of Arizona in Midkiff v. State, 29 Ariz. 523, 243 P. 601, 606, concluded that the lower court had properly sustained objections to questions seeking to show that a witness had been convicted of desertion by a court martial, the view of the Arizona court being expressed as follows: "We think the general rule is that, if a witness has been convicted of a crime, it may be shown for the purpose of affecting his credibility, but we are unable to find where any court has ever held that a conviction by a court martial for desertion may be shown for that purpose. Desertion is purely a military offense; it is not a crime under the general law; its character is such as not to involve moral turpitude or to indicate a disposition or trait that would make the witness' testimony questionable. We are of the opinion it was not error, considering the kind of conviction tendered, to refuse its admission."

 It has been established by the doctrines of our decisions that a conviction of a crime involving moral turpitude by a court of another state may be shown for the purpose of discrediting a witness. Dickey v. State, 32 Ala.App. 413, 26 So.2d 532; Williams v. State, 238 Ala. 40, 189 So. 84. In Fidelity-Phenix Fire Ins. Co. v. Murphy, 231 Ala. 680, 166 So. 604, on rehearing, it is clearly held that conviction in a federal court in this state of perjury would render a witness incompetent in our state courts. We find nothing in this decision limiting such evidence of prior convictions solely to federal courts in this State. The only question before the court, and passed on, was the admissibility of the federal conviction by a federal court in this State.

As set forth by Wigmore, Third Ed., Vol. III, Section 980, a judgment of conviction in another jurisdiction ought equally to be admissible as a local judgment; for it equally evidences guilt of crime, and

the crime is the discrediting fact, wherever it may be committed.

By Article I, Section 8, of the United States Constitution, Congress is invested with the power to make rules for the government and regulation of the land and naval forces, and by the same constitutional provisions Congress is authorized to constitute tribunals inferior to the Supreme Court.

The 5th amendment to the federal constitution provides that persons charged with crime shall be proceeded against by indictment, except in military or naval cases. This has also been viewed as a source of authority for courts-martial. Winthrop Military Law and Precedents, 1920 Reprint, p. 48.

Under these powers Congress has from time to time enacted articles of war, and other laws, providing for the establishment of courts-martial. Winthrop, supra.

Unquestionably a court martial would be invested with jurisdiction to try this appellant for the offense of desertion.

While a court martial is not a court of record, yet an accused before such tribunal is afforded substantially the same protection as he would have been afforded in a federal or state court. A charge sheet takes the place of an indictment. The rules of evidence are similar. There is a right to counsel, and a right to be confronted with the witnesses against him, with a right of cross-examination. The burden of proving guilt beyond a reasonable doubt is on the prosecution. Furthermore, an automatic review is afforded in cases of conviction of offenses of the serious nature as the one in this case.

Court martial proceedings, where no illegality is exhibited upon their face, will in general be presumed to be regular and valid. Winthrop, supra, p. 50.

The evidence of the conviction by a court martial resulted from the examination of the appellant. No question of any record evidence is therefore before us.

 It is our conclusion that a conviction by a court martial, a court of competent jurisdiction for military offenses, is

admissible as affecting the credibility of a witness, provided the offense for which a conviction was had was one involving moral turpitude.

We do not agree with the view expressed in the Midkiff case, supra, that because an offense is purely military in character, such fact in itself negatives the existence of moral turpitude.

In Moore v. State, 12 Ala.App. 243, 67 So. 789, 791, Justice Brown, now of our Supreme Court, but then a member of this court, quoting from other authorities, defined "moral turpitude" as: "Anything done contrary to justices, honesty, principle, or good morals; an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary". Moral turpitude implies something immoral in itself regardless of the fact whether it is punishable by law. The doing of the act and not its prohibition by statute fixes the turpitude. Pippin v. State, 197 Ala. 613, 73 So. 340; Gillman v. State, 165 Ala. 135, 51 So. 722.

 If a conviction was for an offense involving moral turpitude, it may be shown to affect the credibility of a witness, regardless of whether it be a felony or a misdemeanor. Hutchens v. State, 207 Ala. 126, 92 So. 409.

 "Moral turpitude," as a concept, does not lend itself to a neat or exact definition. The time at which an act is done is a determining factor in judging its morality as reflected in social duty. Reflecting this, Article of War 58, 10 U.S. C.A. § 1530, provides that for desertion in time of war a person may suffer death, but prohibits the infliction of the death penalty for this offense if it is committed at any other time. While it may be rationally arguable that desertion from military duty in time of peace does not involve moral turpitude, we are clear to the conclusion that desertion from such duty in time of war, with all the ignobleness implied by the act, makes certain the probative value of evidence of such dereliction, as it may affect the credibility of a witness. The ruling of the court in the premises was therefore correct.

 The court also correctly sustained the State's objections to questions propounded to the appellant by his counsel seeking to show explanatory details of the offense for which appellant was convicted by the court martial. Mayo v. State, 32 Ala.App. 264, 24 So.2d 769; Latikos v. State, 17 Ala.App. 655, 88 So. 47.

No brief has been filed in behalf of the appellant in this cause. We have however consonant with our duty carefully examined this record. It is our conclusion that the rulings of the court in the progress of the trial are free of error probably injuriously affecting the substantial rights of this appellant. These rulings are based on settled principles and do not invite discussion. This cause is therefore due to be affirmed, and it is so ordered.

Affirmed.