101 So.2d 88

**Anderson Woodrow McMURTREY**

**v.**

**STATE.**

**3 Div. 3.**

Court of Appeals of Alabama.

Oct. 29, 1957.

Rehearing Denied Nov. 26, 1957.

Wm. J. Fuller, Jr., Montgomery, and
Ben H. Lightfoot, Luverne, for appellant.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant in his original trial was convicted of manslaughter in the first degree under an indictment charging murder in the second degree. On appeal the judgment entered in the original trial was reversed because of certain rulings on the admission of evidence. See McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528.

In this second trial, by proper instructions of the court, the issue was submitted to the jury on the charge of manslaughter in the first degree. The jury found the defendant guilty of this charge, and this appeal is from the judgment entered pursuant to the verdict.

The evidence submitted in the second trial does not differ too materially from the evidence submitted in the prior trial, except that the appellant did not testify in the second trial, and of course the evidence we held erroneous in the first appeal was not offered.

The evidence presented by the State tends to show that on 19 September 1953, at about 9:00 A. M. the appellant and the deceased, Harvey Ray Kennedy, a man about 65 years of age, drove in appellant's pick-up truck from Montgomery to the home of a colored woman, Tennessee Owens, in Lowndes County. At Tennessee's home they got out of the truck and sat on the porch for a few minutes, talking gen-

erally. The deceased from time to time dropped his head, and was drooling on his shirt front. From the evidence he was undoubtedly drunk, and in fact the evidence shows that both men had been drinking heavily the night before they left Montgomery, and continued drinking on the trip to Lowndes County.

After a short while the appellant and deceased got into the truck and drove about a quarter of a mile away and parked near a fish pond.

The truck was observed there twice by Tennessee during the day, and she saw no one approach it.

About the middle of the afternoon Mose Hunter, a colored man, was approaching Tennessee's house on horseback. He saw the truck and the two men "leant" on the seat as though asleep. Mose rode on to Tennessee's house.

In a few minutes the appellant again arrived at the house in his truck. He still appeared to have been drinking. He requested Tennessee to fix him something to eat. At first she refused, then agreed to cook something provided the appellant would obtain something to cook.

The appellant gave Mose a ten dollar bill and they got into the truck to ride in search of groceries.

As they arrived at the place where the truck had been parked the appellant told Mose "That old man may be dead." Appellant stopped the truck and told Mose to look at the deceased. Mose did so, and told appellant that the deceased appeared to be dead.

There were "drag" marks from the place where the truck had been parked to the body.

Mose returned the ten dollar bill to appellant and returned on foot to Tennessee's house.

The appellant arrived about the same time. He told Mose and Tennessee that he hadn't done a thing to that "old son of a bitch, he just passed away." They then asked appellant if he was going to call "the law." The appellant stated he wasn't in condition to see "the law," and got in his truck and left.

Mose then contacted Mr. Ed Mealing, who called the Sheriff of Lowndes County.

The body of deceased was removed to an undertaking establishment in Montgomery, where an autopsy was performed on it that night.

■ The autopsy was performed by Mr. W. L. Sowell, a staff member of the State Department of Toxicology and Criminal Investigation. Mr. Sowell testified that he held a B. S. degree in Chemistry from the Alabama Polytechnic Institute, and has studied in addition bacteriology and human anatomy; he had taken two courses in zoology, one course in comparative anatomy, one course in genetics, one course in pathology, two courses in physiology, and two courses in toxicology.

He has been a member of the Department of Toxicology and Criminal Investigation since 1945, and during that time he has performed autopsies on around 500 bodies, and during his service he has studied wounds, the nature of wounds and their consequences on the human body.

Mr. Sowell testified that in the autopsy on the deceased he found a bruise on the right side of the face, swollen and hard, approximately two inches long and a half inch wide; on the back of the neck was another bruise of the same size; below the left ear was a tear. On the underside of the scalp he found hemorrhagic areas under the bruises. Opening the skull he found the brain generally congested with blood.

None of these wounds, nor conditions were sufficient to cause death in themselves.

Over appellant's objection however, and by a series of questions eliciting such testimony, Mr. Sowell testified that in his opinion the bruises on the deceased's head were caused by a blunt instrument, or a fist; that these blows produced the brain congestion, which in turn stimulated the ·

vagus nerve which runs from the brain to the heart, which in turn caused a constriction of the coronary artery and deceased's death from coronary occlusion.

One of the points argued in brief for appellant is that the court erred in permitting Mr. Sowell to give his opinion testimony as to the cause of deceased's death, on the ground that Mr. Sowell was not properly qualified as an expert to express such opinion.

In view of Mr. Sowell's studies, and his experience of some thirteen years as a State Toxicologist we think he was shown to be amply qualified to testify as an expert in this field. Payne v. State, 261 Ala. 397, 74 So.2d 630; Phillips v. State, 248 Ala. 510, 28 So.2d 542. It might be observed that both of the above cases held that an assistant State toxicologist whose study and experience was substantially no greater than that of Mr. Sowell was qualified to give expert testimony as to cause of death.

■ The State introduced as a witness Mr. W. B. Painter, a State investigator. Mr. Painter accompanied other officers to the home of appellant in Montgomery on the night of the day in question, and appellant was placed under arrest.

Statements made by the appellant that night, and the next day at police headquarters were, after proper predicate, received in evidence.

The statements are recountals of appellant's meeting with deceased, their drinking, their trip to Lowndes County, and the occurrences there. We do not see that they materially alter the evidence already introduced, except that the appellant asserted that while the truck was parked near the pond the deceased engaged in an act of homosexuality with him. In view of appellant's assertions in the statement that while he was drunk, he was not so drunk he did not know what was going on, and that there was never any argument of any sort between him and deceased, it must be deemed that if the appellant did not consent to this abnormal act, he at least acquiesced in it.

Counsel for appellant objected to that portion of the statement relative to the abnormal sex act, and also moved for a mistrial because of its admission. The court ruled adversely to the appellant in these instances.

Later the court made this statement:

"The Court: Gentlemen, after further consideration I think the statement is not admissible except that the defendant admitted that he was with Harvey Ray Kennedy the entire time and I think that that part of the statement is certainly relevant and I'm going to instruct the jury as to the rest of the statement and the jury is not to consider it."

We do not find in the record that any instructions were later given the jury in this connection.

This aside, we think the evidence objected to was part of a series of events leading up to Kennedy's death, and so entertwined therewith as to be a part of the res gestae. This being so, the fact that the portions of the appellant's statement which were objected to tended to show the commission of another crime is immaterial. Grant v. State, 250 Ala. 164, 33 So.2d 466; Barnes v. State, 31 Ala.App. 187, 14 So.2d 242; Drake v. State, 257 Ala. 205, 57 So.2d 817.

Mr. John J. Cochran, a witness for the State, testified that he was employed as an embalmer by Memory Chapel, an undertaking establishment in Montgomery; that he remembered picking up the body of the deceased in Lowndes County on a night in September 1953; that the body was taken by ambulance to Memory Chapel, and carried to the embalming room where it remained until the arrival of Mr. Sowell, the State Toxicologist.

On cross examination Mr. Cochran testified he had been an undertaker for 37 years, and during this time had observed "worlds" of bodies that had received various types of wounds.

Counsel for appellant then addressed to the witness questions as to whether he had

come to any conclusion as to the cause of Kennedy's death; whether he could see any injuries on Kennedy's body which in his opinion could have caused death; and whether in his opinion the cause of Kennedy's death was very likely a heart attack.

The court sustained the State's objections to all of the above questions.

■ Only an expert can express an opinion as to the fatality of wounds, and an undertaker, as such, is not an expert in such matters. However, he may, by training, study and experience be deemed qualified to express as opinion as an expert, taking into consideration the nature of the wound and its probable cause and effect. However, whether a witness is shown to be qualified as an expert to give opinion evidence is largely within the discretion of the trial court. Hicks v. State, 247 Ala. 439, 25 So.2d 139; Phillips v. State, 248 Ala. 510, 28 So.2d 542.

■ In this case Mr. Sowell, the toxicologist, had testified that none of the wounds on deceased's head were sufficient in themselves to have caused death. It was only upon conditions disclosed by the autopsy that Mr. Sowell was able to form an opinion as to cause of death. The evidence fails to show that Mr. Cochran was present during this autopsy. It was only from such presence and observation that he could have formed an opinion of probative value. The lower court, in these circumstances, did not abuse its discretion in refusing to permit Mr. Cochran to testify as an expert in the premises.

The appellant sought to introduce in evidence a certified copy of the record of convictions of deceased in the Recorder's Court of the City of Montgomery. The State's objection to the admission of this evidence was sustained.

Through defense witness, Dr. M. B. Kirkpatrick, the defense had sought to elicit testimony by way of a hypothetical question as to the effect of heavy drinking over a long period by deceased and its probable effect in producing a coronary occlusion. The State's objection to this question was sustained, the question as hypothesized containing numerous facts beyond any predicate appearing in the evidence. The court stated that if later evidence established the hypothesis he would permit the question to be answered. No such evidence was later produced.

Mr. Sowell had testified that his test of deceased's blood for alcohol showed that deceased was intoxicated at the time of his death, but the amount of alcohol in the blood was not within a fatal range; and in his opinion deceased's intoxication did not influence or cause his death.

■ Ordinarily evidence of the deceased's ill health or debilitation is not competent to prove that blows inflicted upon him would not cause his death. State v. Morea, 2 Ala. 275; Dumas v. State, 159 Ala. 42, 49 So. 224.

An almost identical question was presented in a Texas case, Griffin v. State, 40 Tex. Cr.R. 312, 50 S.W. 366, 367, and that court held evidence of prior drinking by a deceased inadmissible, where the deceased received a wound on the head from a beer glass thrown at him by the defendant. The Texas Court wrote:

"Appellant proposed to prove that deceased was addicted to the excessive uses of alcoholic liquors, and was beastly and helplessly drunk two days before the killing. He states that this evidence was offered for the purpose and as preliminary to the testimony of Dr. Rape, who attended the deceased at the time of his death; and that he proposed to prove by him that, but for the inflamed condition of the brain, the blow inflicted would not have caused the death of deceased. The court explains this by stating that Dr. Rape testified in the case, and did not testify as stated in the bill of exceptions. The testimony, as offered, was excluded. In this we see no error. Even if the testimony of Dr. Rape had been to the effect that, but for the diseased condition of the brain, death might not have resulted from the blow, still there

would have been no error in rejecting said testimony. The blow was the proximate cause of the death of deceased, and the enfeebled condition of deceased at the time would not be material. There was no suggestion here of any gross negligence on the part of deceased after receiving the blow, or of his attendants."

■ The court did not err in this case in rejecting the record of deceased's prior convictions on a charge of "drunk."

■ An objection was interposed to State's witness Otto Moorer's testifying, on the ground that he had been present in the court room during "yesterday."

In overruling this objection the court stated: "It was called to the court's attention by the Solicitor that this witness was in the room most of the time during the direct examination of—or all of the direct examination of the State's first witness, he was then put under the rule and as far as the court knows has remained since that time."

This matter was within the discretion of the trial judge, and we find no abuse of discretion under the circumstances. See 18 Ala.Dig., Trial, ☞ 41(5) for numerous citations of authority.

The charges requested by the appellant which were refused were refused without error in that they were either affirmative in nature and properly refused under the evidence, or were abstract under the evidence, or sought to state legal principles inapplicable to the facts of this case.

■ The evidence of State's witness Sowell tended to show that the deceased came to his death as a result of blows inflicted by a blunt instrument, or a fist. Further evidence by the State tends to show that this appellant was the only person with deceased during the time said blows could have been inflicted. A homicide being shown, it was incumbent upon the appellant to prove circumstances in mitigation, excuse, or justification, unless shown by the evidence produced against him. The degree of mitigation, the validity of the excuse or justification are questions for the jury. Champion v. State, 35 Ala. App. 7, 44 So.2d 616.

The learned trial judge below was, in our opinion, after a study of this record, most careful in protecting the substantial rights of the appellant by his rulings. We find no probability of injury to such rights. This judgment is therefore due to be affirmed, and it is so ordered.

Affirmed.