124 So.2d 110

**Jeff WALLACE**

v.

**STATE.**

6 Div. 699.

Court of Appeals of Alabama.

Aug. 16, 1960.

Rehearing Denied Sept. 6, 1960.

Richard L. Jones and W. E. Brobston, Bessemer, for appellant.

MacDonald Gallion, Atty. Gen., and Jerry L. Coe, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant's trial upon an indictment charging murder in the first degree resulted in a verdict and judgment of guilty of murder in the second degree, punishment being fixed at twenty years in the penitentiary.

The deceased was the wife of the appellant, the marriage having taken place three years prior to the shooting.

For some time their married life had been marred by quarrels, threats, and altercations. The appellant testified that his wife had shot at him on prior occasions, and also that he had not too long before the shooting "slapped hell" out of his wife. It was defendant's contention and this is fairly well borne out by the trend of all the witnesses, that most of the alleged threats by appellant resulted from his wife's excessive use of alcohol and barbiturates.

As to the shooting, and the events immediately prior thereto, the evidence introduced by the State tends to show that the appellant returned to his home at around 7 P.M. The deceased was in the kitchen eating and the appellant asked her to fix him something to eat. She replied that food was on the table. The appellant stated that he did not want any of it, and told deceased to get up and fix him something. The deceased pushed her plate over to appellant and he ate what was left on the plate. When the appellant finished eating he arose from the table. The deceased saw a spot of blood on the appellant's shirt and asked

him where he got it. The appellant replied, "Wouldn't you like to know," and the deceased answered, "Yeah." The appellant then asked her to go with him and she replied that she wasn't going anywhere with him. Thereupon an argument ensued with the deceased saying, "Jeff, we are not going to disturb Mother like we did this morning." The appellant answered, "We are not going to disturb anybody." The deceased then turned to leave and when she got to the door of the bedroom the appellant pushed her into the room. The parties were then out of sight of the State's witness, Reuben Harris, who had been in the kitchen with them. However, almost immediately, that is within a few seconds, a shot was heard and upon entering the bedroom Harris saw the deceased falling. He ran to another part of the house and informed the mother of the deceased that the deceased had been shot. Harris and the deceased's mother returned to the bedroom. There they saw appellant on the floor holding his wife in his arms and saying, "Dixie darling, Dixie darling, why did she grab at the gun." The appellant asked the witnesses to notify the authorities. His wife was dead upon arrival at the hospital.

Prior to entering the bedroom the defendant had a pistol in a holster on his hip, he having a permit to carry a pistol. Neither the State's witnesses nor the appellant were certain as to whether the guard on the holster was snapped when the appellant entered the bedroom.

At the hospital the appellant was questioned by Officer Cecil B. Golden who testified that the appellant stated that he had shot his wife one time with a pistol, that he owned the pistol, and had a permit to carry it. The appellant identified the pistol and turned it over to the officer. At this time the pistol contained five loaded cartridges and one that had been fired.

In his own behalf the appellant testified that he did not push his wife into the bedroom, but that he followed her therein and attempted to put his arms around her; that she grabbed the pistol from his holster and whirled around with her back to him; that he attempted to take the pistol away from her and while they both had their hands on the pistol it fired.

The appellant further testified that his wife had been drinking at the time. It was further the contention of the appellant that while he and his wife exchanged threats, it was always more or less in a joking manner. He also testified that at the time he may have slapped his wife it was done in an effort to quiet her boisterous and quarrelsome behavior while she was in a highly drunken condition.

The bullet entered the deceased's face near the middle of the upper lip and ranged upward into the brain.

Appellant argues strenuously in his brief that the court erred in submitting the issue of murder in either degree to the jury because of the failure of the evidence to establish malice.

■ "Legal malice" as applied to homicide is an intent to unlawfully take the life of another without legal excuse, justification or mitigation. Warren v. State, 34 Ala.App. 447, 41 So.2d 201. Counsel for appellant contend that no malice is inferable from any of the facts, not even the deadly use of a weapon. It is of course fundamental that malice may be presumed from the use of a deadly weapon, unless "the circumstances of the killing disprove malice." Dixon v. State, 128 Ala. 54, 29 So. 623, 624, or as otherwise stated "the evidence which proves the killing rebuts the presumption." Hornsby v. State, 94 Ala. 55, 10 So. 522, 526; Simpson v. State, 31 Ala.App. 150, 13 So.2d 437.

■ Every killing is unlawful unless expressly excused or justified by the law. The homicide being shown, it is incumbent upon the defendant to bring forward evidence in mitigation, excuse, or justification, unless shown by the evidence produced against him. Champion v. State, 35 Ala.App. 7, 44

So.2d 616; McMurtrey v. State, 39 Ala. App. 319, 101 So.2d 88.

In view of the quarrels, assaults, and actual blows inflicted, of the various threats to kill, and of the appellant's statement to Officer Golden on the night of the shooting that he had shot his wife one time, without at that time asserting or claiming that the shooting was an accident, we think the lower court would have been unjustified in not submitting to the jury the question of appellant's guilt of murder, in that under the evidence presented the jury could reasonably have inferred from the evidence the existence of malice and all of the other elements of murder.

The record shows the following during the argument of the solicitor to the jury:

"Mr. Elliott: —he had told a fellow worker that he was going to kill his wife.

"Mr. Odum: I object to that, may it please the Court. They haven't brought one living soul—

"Mr. Elliott: I am fixing to tell them he didn't deny it when I asked him.

"Mr. Odum: They haven't brought a soul in here to testify, and they could have brought any, if there were such, to testify if he made the statement.

"Mr. Elliott: What I have said—

"The Court: Overrule.

"Mr. Odum: We except."

During his cross-examination, in reply to a question as to whether he would deny that he had told a fellow worker that he was going to kill his wife, the appellant answered, "I will not deny that. Jokingly I could have said as much." This statement seems to have been the basis for the solicitor's statement to the jury which was objected to by counsel for the appellant.

A full reading of the entire episode shows that the solicitor clarified this point when he stated "I am fixing to tell them he didn't deny it when I asked him." This clarification by the solicitor we think removed any alleged error that may have resulted from his original statement. Furthermore, in view of the abundance of other evidence tending to show numerous threats made by the appellant toward his wife, we doubt that this appellant was probably injured in any substantial right by the above incidents. Sup.Ct. Rule 45, Code 1940, Tit. 7 Appendix.

No error resulted from the refusal of appellant's written requested charges 10, 15, and X.

Charge 10 was adequately covered by the court's oral charge, and by written given charges 5 and 33.

Requested charge 15 instructs the jury they cannot convict if there is a probability of innocence. This same principle is covered in given charges 4 and 27.

Charge X was adequately covered by the court's oral charge.

Counsel for appellant contend that the lower court erred in refusing the appellant's motion for a new trial on the ground asserting newly discovered evidence.

This newly discovered evidence consists of an affidavit by the State's witness Reuben Harris to the effect that at the time of the trial he was ill, feverish, and confused, and that his testimony to the effect that the appellant pushed his wife into the bedroom was not true; and that in the event of another trial he would testify that the appellant had his arms around the deceased in a loving manner at the time they went into the bedroom.

Prior to announcing his decision denying the motion for new trial the court stated that he knew that the witness Harris was ill at the time of the trial but that he did not believe Harris was confused due to the fact that he had heard Harris testify in a habeas corpus proceeding when he was not ill, and his testimony relative to the killing had been substantially the same in both the

habeas corpus proceeding and in the trial below.

The granting or refusal of a motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and will not be revised on appeal unless it clearly appears that discretion has been abused. Taylor v. State, 266 Ala. 618, 97 So.2d 802, and authorities cited therein. And where the newly discovered evidence is in the form of a recantation by a witness the courts, with their experience with witnesses, generally pay but little regard to the statements of the recanting witness, and only in extraordinary and unusual cases will a new trial be allowed because of the recanting statements. See 158 A.L.R. 1062–1063.

We can find nothing that would justify our conclusion that the court below abused his discretion in denying the motion for a new trial on the ground above discussed.

It also appears that during the cross-examination of the appellant evidence was elicited from him, over timely objection, to the effect that he had been sentenced for desertion from the army in time of war. No error resulted from the court's ruling in this incidence. We have heretofore held that desertion in time of war is an offense involving moral turpitude and may be shown as affecting the witness' credibility. Nelson v. State, 35 Ala.App. 179, 44 So.2d 802.

From our examination of this record it is our conclusion that the trial below was free of error probably injurious to any substantial right of this appellant. This judgment is therefore due to be affirmed and it is so ordered.

Affirmed.

## On Rehearing

In his brief in support of his application for rehearing, counsel for appellant asserts that we erred in the holding that charge X was adequately covered by the court's oral charge, and requests that we point out what part of the oral charge covered refused charge X.

Counsel argues that charge X was not covered by the court's oral charge in that:

"A killing resulting from an accident, although carelessly done, would constitute manslaughter and not murder.

"We sincerely believe that the jury should have been permitted the opportunity to consider whether the killing resulted from an accident brought about by the carelessness or the lack of due care on the part of the accused and that when this right was denied him it constituted reversible error.

"No where in the oral charge or in the given requested charges, was this aspect of the evidence presented to the jury for its consideration."

We are not in accord with counsel's contention.

Requested charge X which was refused by the court was as follows:

"X. I charge you gentlemen of the jury that if you believe from the evidence of this case that the shooting of the deceased was accidental, then I charge you that you can not find the defendant guilty of murder in any degree."

In its oral charge the court instructed the jury as follows:

"Now, gentlemen, you have heard the testimony offered to show that the homicide in this case was caused by an accident. Now, an accident has been defined as that which happens without one's direct intention, happening without design, unexpectedly, or by chance, or contingency.

"Now, it is the law that a homicide by accident is excusable and it is the law that if by misfortune or misadven-

ture, while in the performance of a lawful act, exercising due care, and without intention to do harm, human life is taken, the law will excuse. There must, however, be a concurrence of these facts, and the absence of any one will involve guilt.

"Let me read that again: It is the law that a homicide, by accident is excusable and it is the law that if by misfortune or misadventure, while in the performance of a lawful act, exercising due care, and without intention to do harm, human life is taken, the law will excuse."

In that portion of the oral charge set out above, it appears that the court accorded to the appellant a more favorable principle than that enunciated in refused charge X, in that, the court correctly instructed the jury that a homicide resulting from an accident is excusable, not only as to murder but as to manslaughter as well.

We therefore adhere to our former conclusion that charge X was adequately covered by the court's oral charge.

Application overruled.