285 So.2d 122

**M. J. STANFORD, alias**

v.

**STATE.**

**8 Div. 154.**

Court of Criminal Appeals of Alabama.

Aug. 14, 1973.

Rehearing Denied Sept. 25, 1973.

H. T. Foster, Campbell & Campbell, Scottsboro, for appellant.

William J. Baxley, Atty. Gen., for the State.

W. C. HINES, Circuit Judge.

The appellant was charged with the offense of murder in the first degree and received a sentence of fifteen years in prison.

This appeal was brought from a judgment, based on a jury verdict finding the appellant guilty of murder in the second degree.

The first witness called by the State was Van Pruitt, identified as a State Toxicologist, who testified that on October 18, 1970, he performed a post mortem examination on Jesse Shrader, and found a wound approximately one inch above the middle brow of Mr. Shrader's head. The toxicologist stated that the wound was the result of a bullet fired from a high velocity gun, and that the wound caused instantaneous death. He testified further that the results of a test to detect alcohol in Mr. Shrader's body were negative.

Mrs. Jimmie Faye Shrader, Jesse Shrader's widow, testified that her husband died on October 17, 1970. The witness stated that her sister was married to Butch Stanford, the appellant's son, who was jointly indicted for the crime which is the subject matter of this appeal. A severance was granted and he was separately tried. Butch Stanford and his wife were separated and his wife was living with Mr. and Mrs. Shrader. The witness testified that she and her husband had come to Scottsboro on the morning of October 17, 1970. She stated that after leaving Scottsboro, she went to her mother's house at Section. Upon leaving her mother's house she, the deceased, and their two children got into their truck and drove down the Dutton Highway. She testified further that at the same time, her mother and her sister got into their car and also started down the Dutton Highway. They passed the service station operated by the appellant, and saw a red and white Ford Ranger truck parked at the service station. It was further testified that after they passed the service station, the witness' sister, driving her car very fast and blowing her horn, came around the truck in which the witness, the deceased, and their children were riding. After the car passed them, the truck driven by Butch Stanford came alongside the truck in which the witness was driving, and the Stanford truck bumped the witness' truck, and knocked it off the road. Mrs. Shrader stated that the appellant and his son, Butch Stanford were in the truck, which ran the witness' truck off the road.

Before the truck in which she was driving had come to a full stop, the Stanfords had gotten out of their truck and had begun firing rifles at the Shrader's truck. The deceased then got his shotgun off of the gunrack and began to return the Stanfords' fire, until the deceased was killed. After her husband was fatally shot, the appellant approached the truck, in which she and her husband and children had been riding, and the appellant stated, "Let's go get the rest of them," and the appellant's son, the co-defendant below, replied, "Come on, Daddy."

Max M. Robertson testified that he was an investigator for the Sheriff's Department of Jackson County, Alabama. He stated that he went out to the place where the decedent was killed and took some pictures of the scene and of the deceased's body. Upon physically examining the appellant's person, Robertson found lodged in him twenty-six shots, presumably from shotgun pellets, and also nineteen shots in his son, Butch Stanford. He testified further that the Stanford truck had shotgun pellets in the top and tailgate portions. The witness further testified that the appellant's truck was found two days after the shooting behind one Lionel Medlock's house. Bullet holes were also found in the truck in which the deceased and his family were riding.

Gayla Diane Shrader testified that she was the daughter of the deceased. The witness testified that her mother had a married sister, whose husband was Butch Stanford, a co-defendant in the instant case. This sister had been staying with them prior to the killing of the witness' father. She, along with her mother and her little brother, left the house in a pickup truck with her father driving. She stated that soon a car with her mother's sister came by them driving fast and blowing the horn. The truck with the appellant and Butch Stanford overtook the truck in which she was riding and knocked it off the road. She stated further that the ap-

pellant and his son began firing at the truck in which she was riding even before that truck had stopped. The appellant and his son fired the first shots, and that after the shooting she heard the appellant say, "Let's go and get the rest of them." She further testified that the appellant's son, Butch, replied, "Come on, Daddy, let's go." She stated further that her father fired two shots before he was killed.

The next witness called by the State was Thomas Paschal. The witness testified that he arrived at the scene of the shooting soon after the event. When he arrived, he saw a truck stuck in the ditch, and he saw the deceased still struggling for breath. He saw an elderly gentleman, whose identity he did not know, pick up something off the ground, and give it to a Mr. Oliver Laney. He further testified that he saw Mr. Oliver Laney hand the items received by him from the elderly man to Officer Evans. The witness testified further on cross examination that the elderly gentleman, who picked up something at the scene, arrived after the witness. He saw the elderly gentleman hand the shells to Mr. Laney, and that there were two shells, and perhaps another one.

Billy Jack Evans testified that he was Deputy Sheriff of Jackson County at the time of the incident involving the present case. The witness testified that Oliver Laney handed him three rifle cartridges at the scene of the shooting. He testified further that after Sheriff Collins arrived on the scene, he turned the three shells over to him.

Sheriff Collins testified that he was Sheriff of Jackson County at the time of the shooting of Jesse Shrader. He stated that when he arrived at the scene, Officer Billy Jack Evans handed him three fired rifle shells. The three fired rifle shells were introduced in evidence as State's Exhibit Number Twelve. The witness further testified that he found one unfired 30–06 cartridge approximately thirty-three steps toward Dutton from the Shrader truck. This cartridge was further introduced in evidence as State's Exhibit Number Thirteen. The Sheriff testified that of the three fired cartridges, one was 30–06 and two were 30–30's. The witness testified further that Mr. Laney also handed him three empty shotgun shells, which Mr. Laney said he picked up behind the Shrader truck. The Sheriff testified further that he found six unfired shotgun shells on the ground by the left door of the Shrader truck on the driver's side. After the Sheriff's testimony, the State rested.

Hugh Carter testified on behalf of Defendant that while he was traveling toward Dutton, he caught up with the Stanford truck and the Shrader truck. He then saw a car go around the Shrader truck. As the Stanford truck attempted to pass the Shrader truck, the Shrader truck pulled over and hit the side of the Stanford vehicle, and the Shrader truck left the road and went into a ditch. The Stanford truck continued down the road toward Dutton for approximately thirty yards and stopped on the pavement. After stopping, the appellant and Butch Stanford got out of the truck. The witness testified that neither had a gun. Mr. Carter testified further that the deceased got out of his vehicle with a shotgun and shot twice at the Stanfords.

On cross examination, the witness stated that although he saw the shooting incident, he did not report it to anyone, and had not informed the District Attorney, the Grand Jury, nor his own wife about what he had seen that afternoon. The witness testified further that he knew the defendant, but did not know the deceased.

The witness, J. R. Neely, testified that the Stanfords came to his house, and that Butch Stanford asked if he would carry him and his father to the hospital. The witness testified that there was blood on Butch's face, but that he did not see any blood on the appellant. The witness testified further that he did not see any guns in the Stanford truck.

The appellant testified that on the morning of October 17, 1970, he was at his grocery store and service station at Pleasant View. He stated that at twelve noon, his son, Butch Stanford came into the store, and they started to Dutton, with Butch driving, in order to pick up some supplies. He stated that there was a 30–06 rifle in the truck and that it normally was located in the truck. He testified that as they drove down the highway they came upon a car and a pickup truck. The car passed the pickup truck, and when the appellant's truck attempted to pass the other truck, which was driven by the deceased, he attempted to run the appellant's truck off the road, but instead was driven off himself. The other truck landed in a ditch. The appellant testified further that the truck in which he was riding stopped thirty or forty yards ahead. The appellant and Butch got out of the truck, and the deceased got out of his truck and began firing at them. He stated that the deceased shot Butch Stanford twice, and shot the appellant. After the deceased started firing, Butch took his rifle out of the truck and shot two or three times at the deceased. The appellant stated that he did not have a rifle, nor did he fire any shots at that time. He testified that after the shooting, he went down to the truck to see if Butch Stanford's baby was in the truck, and that he did not render any assistance to the deceased. The appellant denied saying, "Let's get the rest of them," while walking toward the deceased's truck. Both Butch Stanford and the appellant left the scene going to the hospital, and stopped at J. R. Neely's house in order to get him to take them to the hospital. He stated that he did not see Butch Stanford's wife drive by his station on the day of the shooting.

James (Butch) Stanford testified that he and his father left their service station a little before twelve o'clock in his father's pickup truck. He had not seen his ex-wife drive by the service station, nor did he see the Shraders pass by on that morning. He stated that when they reached the water tank, they came upon two vehicles with a truck in front and car behind. He tried to pass the car, but before he could, the car pulled out in front of him and accelerated and passed the truck. He testified that he did not know the person who was driving the truck. He then attempted to pass the truck, but the truck attempted to run him off the road. The other truck then ran off the road and landed in a ditch. When the witness got out of his truck, he was shot twice in the face. He then reached into his truck and pulled out his rifle and fired twice. Then the deceased shot the appellant. As the deceased was pointing his gun back at the witness again, the witness fired his rifle and shot the deceased. He stated that before they had left the service station, the appellant had gotten the 30–06 rifle and a lot of shells, and put them into the truck. The witness testified that there was only a 30–06 and not a 30–30 rifle in the truck. The box of shells in the truck did contain 30–06 and 30–30 cartridges. He testified that he and the deceased had had some words in Scottsboro, the morning before the shooting, and that the deceased had threatened to kill the witness before nightfall. The witness testified that he did not know who was driving the car or the truck, that he attempted to pass, and that he first recognized Shrader when the Shrader truck ran into his vehicle. He stated further that he did not remember his father walking toward the Shrader truck after the shooting.

With the consent of the State, the defendant introduced in evidence an affidavit of Oliver Laney, stating that he had arrived on the scene of the shooting, prior to the arrival of police officers, and that an old man, whose face was familiar to him, but whose name he did not know, handed him three hulls of spent rifle cartridges. The affidavit recited further that to the affiant, the hulls appeared to be of the same length, but that they were larger caliber than a .22 caliber rifle. The affiant stated further that he gave the hulls to a Deputy Sheriff, after his arrival on the scene.

Mrs. Jimmie Faye Shrader, recalled on rebuttal, testified that on the morning of the shooting, the deceased and James (Butch) Stanford had a conversation in front of the courthouse in Scottsboro, in her presence. She stated that her husband made no threats on Mr. Stanford, but that Butch Stanford stated, "I will blow your Goddamned brains out."

■ The appellant argues that the trial Court erred in refusing to give the appellant's requested charge which is as follows: "The Court charges the jury that if you believe the evidence in this cause, you can not find the Defendant, M. J. Stanford, guilty of murder in the second degree," and further erred in failing to grant a new trial on the grounds that the verdict was contrary to the evidence. It is unquestionable that conflicting evidence presents a question for the jury as to the defendant's guilt. Morris v. State, 47 Ala. App. 132, 251 So.2d 629.

It is clear to us as shown by the recitation of the evidence hereinabove, that the State made out a prima facie case against the appellant for the crime of murder in the second degree. While it is true that there is a conflict in the evidence concerning who shot first, the appellant or the deceased, or whether the appellant fired at all, there was ample evidence introduced to go to the jury on these questions. The evidence has been cited *in extenso* herinabove, and a further delineation would add nothing to this opinion.

■■ It is a rule of long standing in Alabama that "Malice may be presumed from use of a deadly weapon unless circumstances of the killing disprove malice." Wallace v. State, 41 Ala.App. 65, 124 So.2d 110; Dixon v. State, 128 Ala. 54, 29 So. 623. The appellant argues that this presumption has no application in the case at bar, since the circumstances of the killing disprove malice. We do not agree. There is testimony showing that the appellant got into his truck along with his son, and that prior to getting into the truck, the appel-

lant put his 30–06 high velocity rifle into the truck, along with a box of shells. There is testimony further showing that after the truck, in which the appellant was a passenger, had driven the deceased's truck off the road, the appellant got out of his vehicle and commenced firing at the deceased with a rifle, even prior to the deceased's vehicle coming to rest in a ditch off of the highway. There is further testimony that after the deceased was shot, the appellant walked toward the deceased's vehicle and stated, "Let's get the rest of them." While there is a conflict in the evidence, concerning the circumstances of the homicide involved in the instant case, this is the usual situation in a homicide, and it is for the jury to weigh the evidence, as presented to it, and arrive at a verdict based on this evidence. It is not for us to place ourselves in the position of being triers of the fact; that is clearly the province of a jury.

■ The appellant complains that the trial Court erred in failing to give his requested charge I, which is as follows: "The Court charges the jury that unless you are satisifed beyond a reasonable doubt that the Defendant, M. J. Stanford, killed Jessie Shrader intentionally, that you can not convict the Defendant of murder in the second degree or manslaughter in the first degree." One may be convicted of second degree murder, without a finding of a specific intent to kill. Rogers v. State, 49 Ala.App. 78, 268 So.2d 859; Smith v. State, 154 Ala. 31, 45 So. 626. Therefore, the trial Court was eminently correct in refusing to give the defendant's requested Charge I, since the statement of the law therein is misleading and incorrect.

■ The appellant complains that the trial Court erred in refusing to give his requested written charges L and K, which are as follows:

"L. The Court charges the jury that your verdict must be unanimous as to the guilt or innocence of the defendant, as to the degree of criminal homicide of which he is guilty, and of the punish-

ment to which he should receive. If you and each of you cannot agree upon all three of these elements, then you cannot convict the defendant."

"K. The Court charges the jury that, unless each of you is satisfied beyond a reasonable doubt that the defendant is guilty of some degree of criminal homicide, and unless each of you is satisfied beyond a reasonable doubt of the degree of criminal homicide of which he is guilty, and each of you is satisfied beyond a reasonable doubt of the punishment that he should receive, then you can not return a verdict against the defendant."

The thrust of appellant's written charges L and K is that the jury verdict must be unanimous. This idea that unanimity must be obtained by the jury before any verdict could be returned was clearly explained to the jury by the Court, in the oral charge by the following language. "Let whatever verdict you render be written out and signed by one of your number as foreman. Bear in mind, however, ladies and gentlemen of the jury, that any verdict you reach in this case must be a unanimous verdict, one in which all twelve of you agree and concur." It is clear to us that the able trial court adequately instructed the jury on the element of unanimity, and was thus not in error in refusing written charges L and K requested by the appellant.

■ The appellant next complains that the trial Court erred in admitting in evidence State's Exhibit Number Twelve, which were three spent rifle cartridges. Two of the spent cartridges being 30–30's and one being 30–06. The crux of the appellant's objection is that the cartridges were not traced to the scene of the crime. It is our opinion that the State sufficiently linked the three cartridges to the scene of the crime. Thomas Paschal testified that when he arrived on the scene, he saw an elderly man, whom he did not know, come upon the scene and pick up some objects

from the grass. He testified further that these objects were turned over to one Oliver Laney. When they were turned over to Oliver Laney, Mr. Paschal observed them to be rifle shells. Oliver Laney's affidavit was introduced in evidence by agreement between the Defendant and the State, and in said affidavit, Oliver Laney stated that he had received three rifle cartridges from the unidentified elderly man. Laney then handed the shells to Deputy Sheriff Billy Jack Evans, who kept them in his possession until he turned them over to the Sheriff, upon his arrival on the scene. The Sheriff testified that the cartridges were in his possession from the day of the shooting to the day of the trial, and were in the same condition on the day of the trial as they were on the day he received them. There is no question in our minds but that the three cartridges were sufficiently linked to the scene of the crime, and that the trial court did not err in admitting them in evidence. See Russell v. State, 47 Ala.App. 612, 259 So.2d 298.

■ The appellant complains that the trial Court committed reversible error in not granting his motion for a new trial on the grounds that one Leonard Hicks was summoned as a special juror in the instant case, but his name was not put on the list from which the defendant and the State could strike the jury. Leonard Hicks testified at the hearing on the motion for a new trial that he appeared in Court on March 22, 1971, in response to personal service of a summons on him by a Deputy Sheriff of Jackson County. He testified further that he answered to the roll whenever his name was called. He served and was paid for three days as a juror for the March 1971 term of the Jackson County Circuit Court.

Charles W. Wann, Clerk of the Circuit Court of Jackson County, testified that Leonard Hicks was Number Two on the roll of special jurors, and that when the Sheriff called the roll, he stated that there was no service perfected on Leonard

Hicks, and the Clerk so noted on his roll. Hicks was paid for three days' service as a juror, and he filled out the information card required of all jurors in Jackson County Circuit Court.

Sheriff W. R. Collins testified that all jurors are served by mail in Jackson County, and that the Deputies never serve the jurors personally. The Sheriff stated that he did not receive the return stub from Leonard Hicks, and had him noted as "No service." On the day of the instant trial, the Sheriff told the Judge, while the Sheriff was calling the roll, that there was no service on Hicks, and the Sheriff had no recollection of Hicks' answering to the roll call.

Judge Talley, the presiding judge, testified that when the roll was called, he recollected no response from Leonard Hicks, nor was there any objection from the State or the Defendant to the fact that there was no response from Leonard Hicks.

The appellant relies heavily on the case of Dodd v. State, 30 Ala.App. 96, 1 So.2d 670, cert. den., 241 Ala. 152, 1 So.2d 671. In the *Dodd* case, *supra,* the Court excused a member of the venire outside of the presence of the defendant's counsel. This is, of course, strikingly different from the instant case. In the case at bar, the trial Court did not excuse Leonard Hicks from the venire, outside of the presence of the defendant, nor for that matter, did he excuse Leonard Hicks from the venire in the presence of the defendant. The selection of the jury was carried out just as if Leonard Hicks was not in the courtroom, since he apparently made no response to the call of the roll or that response was so inaudible that the court officials did not hear it. It appears from the evidence as submitted to the trial court on the motion for a new trial that Leonard Hicks was in fact in the courtroom at the time of the selection of the jury in the instant case. However, the appellant introduced no evidence to show that in fact Leonard Hicks did answer to the roll call, other than Mr. Hicks' testimony itself. None of the court officials, who testified stated that they heard any response when the name Leonard Hicks was called. It should also be noted that the appellant's counsel did not testify that they heard any response from Leonard Hicks, nor that they were aware that Leonard Hicks was in the courtroom. It should be noted that if the appellant's counsel knew that Leonard Hicks was in the courtroom, this knowledge should have been imparted to the trial court. In the event the appellant's counsel did not know that Leonard Hicks was in the courtroom, then the appellant's counsel was in the same position as everyone else in the courtroom (except Mr. Hicks)—proceeding under the assumption that Mr. Hicks was not present. Title 30, Section 64 of the 1940 Code of Alabama (As Amended) provides as follows: "On the day set for the trial if the cause is ready for trial the court must inquire into and pass upon the qualifications of all the persons who appear in court in response to the summons to serve as jurors, and shall cause the names of all those whom the court may hold to be competent jurors to try the defendant or defendants placed on lists . . . ." It is clear to us that as far as the trial of the instant case was concerned, it was just as if Leonard Hicks did not appear in Court in response to the summons to serve as a juror. If appellant's counsel wished to inquire into the absence of Mr. Hicks, and the regularity of service on him, he could have done so at the time the Sheriff called the roll. Leonard Hicks was not excused from serving as a juror, at any time by the court, and error cannot be attributed to the trial court under the circumstances as set forth hereinabove.

Neither the appellant nor the appellee cites us to any authority on point, nor has our own research uncovered an apropos case. However, we hold that the trial Court did not commit reversible error in not granting the appellant's motion for a new trial on the grounds discussed hereinabove, since no prejudice was shown to the appellant, and no action was taken by the appellant's counsel at the time of the selec-

tion of the jury to inquire into the failure of the venireman, Leonard Hicks, to make his presence known to the Court officials.

We have considered the entire record under Code 1940, T. 15, Section 389, and have examined the record of this appeal for reversible error and from this examination we conclude that error is not made to appear.

The foregoing opinion was prepared by Hon. W. C. HINES, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Section 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.

The judgment below is hereby

Affirmed.

All the Judges concur.