326 So.2d 705

**Wanda JOINER**

v.

**STATE.**

**2 Div. 151.**

Court of Criminal Appeals of Alabama.

Feb. 3, 1976.

J. Parke Keith, Selma, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston III, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Wanda Joiner, convicted of second degree murder in the killing of her husband and sentenced to forty years imprisonment, brings an appeal.

I

The State's case is based on the circumstance that Mrs. Joiner was present with her fatally wounded husband under circumstances negativing accident, suicide, or the agency of a third party.

On the night of July 2, 1974, Steve Joiner was in bed with his wife. Someone put Joiner's shotgun close to his head and pulled the trigger.

The appellant told the Sheriff and police that two negro men came into the bedroom muttering something about showing "Whitey" that he couldn't object to black neighbors. According to her, after they shot her husband they went out a window.

The State's proof was negative. No scent of intruders was picked up by tracking dogs.[1] No fingerprints were on the window sills. No footprints were beneath the windows.

1. See Alabama cases collected in Wigmore, Evidence (3d ed.) § 177 f.n. 3. Here the prosecution established the proper predicates as to the dogs and their handler.

A male witness for the prosecution testified that (1) he had earlier showed appellant how to load and fire her husband's gun, and (2) he had conducted a liaison with her.

Other proof was adduced as to appellant's financial benefits upon her husband's death due to natural causes.

She took the stand and denied killing her husband, denied copulating with the male witness and reiterated her statement as to the killing by the two black burglars.[2]

## II

Wigmore, Evidence (3d ed.) § 131 says in part:

"When an act is done, and a particular person is alleged to have done it (not through an agent but personally), it is obvious that his physical presence, within a proper range of time and place, forms one step on the way to the belief that he did it. It is true that another person may have done it, but the former is at least within the limited number of persons who could have done it, and thus is fit to become a subject for further investigation.

"Under the evidential canon that to a fair extent the possibility of other hypotheses must be first excluded (*ante,* § 31), it might be asked whether the mere possibility involved in Opportunity is not too slender, whether something more than mere opportunity—for example, exclusive opportunity—should not first be shown. The answer to this is that, by the very showing of an opportunity, countless hypotheses are negatived; and the person charged, who might otherwise have been one of innumerable other persons at the time, is shown to have been one of the limited number who are in a position to do this particular act. In short, opportunity alone, and *not exclusive opportunity,* is a sufficient showing for admissibility."

---

2. We quote from appellant's brief in part: " * * * Steve went to sleep and was snoring. The witness sensed somebody was in the room and heard a voice say something to the effect that Steve had been making slanderous statements about people moving in across the street and that they were going to deal with all the whities that felt that way. The voice sounded like a colored person and then there was a flash and a loud noise. The witness ran out of the room and saw the children and used the telephone in the den. Her recollection about the police officers arriving and going to the hospital was rather vague. Also, she did not remember many of the preparations for Steve's funeral. She denied killing her husband and also having an affair with * * *. Also, she denied having made statements to the police officers and Sheriff Baker about colored men leaving through the bedroom window. The witness did not know much about shotguns and had only fired one once or twice. She told about the incident where * * * came over and loaded the gun for her. She could not explain how the blood had gotten on her nightgown. She related that she had taken a trip to Chicago to have a change of scenery but could not recall much about the adventure. Since the incident she had stayed with her mother-in-law, father-in-law and both sisters-in-law and had worked at the Q Yellow Stamp Store in Montgomery. She again denied killing Steve. Under cross-examination she stated that she had raised the windows and the air-conditioner was off on the night of the murder. She could not remember the position of the people standing in the bedroom or exactly where she was when the gun was fired. She did not remember talking to Officer Morgan or Officer Capps. She did not remember making a statement about explaining blood being on the toilet tissue and seemed to have a rather vague recollection about being questioned at police headquarters. She did not remember giving a statement to the police department even though the statement was presented to her. A portion of the statement was read back to her and she did not remember writing or saying she saw two men going out of the window. The witness did not recall making a statement to another person in the house and stated she did not use the wash cloth to wipe blood off her children's feet."

Here by narrowing the alternative hypotheses, the State made a sufficient case to go to the jury. The admissibility of evidence of the opportunity to do murder was recognized in *McMurtrey v. State*, 39 Ala.App. 319, 101 So.2d 88. See also *Wallace v. State*, 41 Ala.App. 65, 124 So.2d 110 and *Cauthen v. State*, 48 Ala.App. 286, 264 So.2d 208. Of like import are *State v. Stallings*, 154 Conn. 272, 224 A.2d 718(15) and *State v. Welch*, 79 Mont. 614, 257 P. 1010(5).

This principle of admissibility does *not* shift the State's burden of proof. It is a factor for the defendant to bear in mind in assaying at what point the scale may tip against him, i. e., the differentiation point at which defendant runs the risk of non-persuasion and can then no longer logically rest on the evidentiary presumption of his innocence.

### III

We have considered the entire record under Code 1940, T. 15, § 389, including the following:

a) The clerk's certificate; [T. 7, § 767]

b) The court reporter's certificate;

c) The statement of the organization of the court; (Sup.Ct. R. 52);

d) The indictment (caption, charge, conclusions, and required endorsements); whether the indictment was timely brought, *Calvert* [*v. State*], 26 Ala.App. 189, 155 So. 389;

e) Judgment entry (arraignment,[3] presence of counsel, twelve jurors, empanelling and swearing of jury, verdict, adjudication of guilt, allocutus, sentence and notice of appeal); and

f) Each ruling of the trial judge adverse to the appellant—Rule A, Ct.Cr.App.—49

AA XXI and Rule 28(a)(7) ARAP— (including without limitation the written charges refused appellant), T. 7, §§ 273 & 274.

The judgment below is

Affirmed.

All the Judges concur.

---

3. If arraignment occurs at a court session before trial date, counsel's presence is mandatory at each session beginning with arraignment unless the cause is continued for attendance of counsel. *Perkins v. State*, 281 Ala. 139, 199 So.2d 839; *Merritt v. State*, 50 Ala.App. 635, 282 So.2d 74.