36 So.2d 580

## McCLENDON v. STATE.

### 6 Div. 539.

Court of Appeals of Alabama.
May 25, 1948.

Rehearing Denied June 15, 1948.

612

DeGraffenried & McDuffie, of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

At the July Term 1947 of the circuit court of Tuscaloosa County, the grand jury found, and returned into open court, an indictment which charged this appellant (defendant) with the offense of murder in the second degree, in that he unlawfully and with malice aforethought, killed Ervin Smith by cutting him with a knife, but without premeditation or deliberation.

The trial in the lower court was had on September 24, 1947, and resulted in the conviction of the defendant of the offense of manslaughter in the first degree and the jury fixed his punishment at imprisonment for a period of ten years. Judgment of conviction was duly pronounced and entered and in accordance with the verdict of the jury, the court sentenced the defendant to imprisonment in the penitentiary for ten years. From said judgment this appeal was taken.

The duty devolves upon the appellate courts (Title 15, Section 389) to consider all questions apparent on the record, or reserved by bill of exceptions (in cases of this kind) and to render such judgment as the law demands. Said section also provides, that the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant.

Pending the trial of this case numerous exceptions were reserved to the rulings of the court upon the admission and rejection of the evidence. As to this we have complied with the requirements of the statute, supra, and find no error in any of the rulings of the court calculated to injuriously affect the substantial rights of the defendant.

Able and earnest counsel for appellant appear to be in accord with the foregoing, except in one instance, which is thus stated in appellant's brief, towit:

"The main contention of appellant in this case, that the Trial Court committed error requiring a reversal of this cause, is that the witnesses for the State, Mr. Leon Chism and Mr. John Henry Suther, should not have been allowed to testify that there was blood and fresh blood on the knife when they were not qualified as experts on this subject. It is the further contention of appellant that, where this evidence had been admitted over the objection of appellant, a witness with more experience in these matters than either of the State's witnesses should have been allowed to testify that he saw no evidence of blood on the knife."

In response to the foregoing insistence upon the part of appellant, the Attorney General, representing the State, very pertinently says in brief:

"It seems clear that the defendant in cross examining the State's witness, Chism (who had investigated this case), had elicited all sorts of testimony concerning blood. Defendant had elicited the fact that there was no blood on the clothing of defendant when apprehended; that

there was 'a good deal of blood' on the front seat of the taxicab, and 'a good deal of blood' on the taxi driver's clothes. In respect to the taxi driver, the defendant elicited from Chism that there was 'blood on his shirt,' and 'blood on his trousers;' also 'blood in the taxi,' and there was 'blood on the ground in pools.' In other words, the defendant himself had closely examined the witness Chism on the question of blood, but this same attorney strenuously objected when the State tried to show that there was blood on the knife found on defendant in Bessemer."

■ Upon this, the only controverted question, we say, expert testimony is often used to identify blood or bloodstains by chemical analysis, etc., yet it has been definitely settled the identification of a substance as blood has often been permitted to be made by a non-expert.

In Lightner v. State, 195 Ala. 687, 71 So. 469, our Supreme Court said:

"A witness need not be an 'expert on blood' in order to testify that fresh marks and spots on the defendant's hands and clothing were made by blood. The appearance of fresh or recently extracted blood is within the common knowledge of mankind, and any intelligent witness is presumptively competent to identify it when he sees it."

In Watts v. State, 177 Ala. 24, 59 So. 270, the Supreme Court said:

"A nonexpert witness was properly allowed to state that an axe found by him on the premises where the homicide occurred had blood and hair on it when examined by him, since it was the statement of a simple fact as to which expert knowledge was not necessary."

In the case of Bray v. State, 16 Ala.App. 433, 78 So. 463, 464, this court, speaking through Presiding Judge Brown, now Justice of the Supreme Court, said:

"All persons are more or less familiar with the appearance of stains caused by blood, and it has been repeatedly held that no particular skill or experience is required to qualify a witness who saw the stains to render his evidence with respect thereto admissible."

This court, in Rountree v. State, 20 Ala. App. 225, 101 So. 325, 326, held:

"It was competent for the state to show by the witness Mrs. Rountree, wife of defendant, that the stains found upon the little girl's clothing were blood stains. This was a mere statement of a fact capable of determination by the average person, and was not objectionable because witness was not an expert."

See also Terry v. State, 203 Ala. 99, 82 So. 113; and Rollings v. State, 160 Ala. 82, 88, 49 So. 329.

■ As disclosed hereinabove, the appellant contends where evidence to the effect there was blood upon the defendant's knife had been admitted, over his objection, it was error for the court not to allow defendant's witness, King, to testify as to whether or not there was blood upon the knife. In this ruling of the court there was no error, as it affirmatively appears from the evidence that State witnesses, Deputy Sheriff Chism and Sheriff Suther, both of whom testified to the fact there was blood upon defendant's knife when they examined it on the same night and a short time after the killing occurred, and witness King had never seen the knife until it was exhibited to him at the time of the trial, some two or three months after the killing, and there was no attempt to show that the knife at the time of the trial was in the same condition as at the time or date of the killing. Moreover, the undisputed evidence conclusively showed that the knife in question was not in the same condition as when the two officers examined it and found fresh blood thereon, but to the contrary that the knife had rusted and was not in the same condition.

There is no dispute or conflict in the evidence relative to the fact that Ervin Smith, the alleged injured party, was killed by having been cut with a knife, at the time and place in question. Nor is there any dispute about the fact that defendant and deceased had a difficulty near the alleged place of killing. That defendant was armed with an open knife in his hand, and that deceased was not armed. The difficulty first started at or near a truck in which the parties had been travel-

ling and ended down in the woods about 200 yards distant from the truck, at which place a pool of fresh blood was discovered.

Upon the trial the defendant introduced in evidence a statement made by him on the night of the killing and a short time after he was arrested. Said statement is marked defendant's exhibit No. 1, and reads as follows:

"July 5, 1947.

State of Alabama

County of Tuscaloosa.

I Cordes McClendon, 27 years old, born August 11, 1919 in Walker County and now residing in 'Cordova, Ala. make the following statement to Sheriff John H. Suther, Deputy Sheriff Elmer Brewer and Deputy Sheriff Walter Snider, who have identified themselves to me as being Police Officers of Tuscaloosa County and no promise of reward or threat has been made to me to cause me to give this statement. I also have been advised that anything I say in this statement may be used against me in the Courts of Law.

On Thursday July 3, me, my wife and baby came with Ervin Smith from Cordova, Ala. where he was visiting us, to his house for a visit. Mr. Ervin Smith married my wife's sister. We all spent the night at Ervin Smith's house and on July 4, 1947 me, my wife and baby and Ervin Smith, his wife and father went to Eutaw Ala. late Friday evening of July 4. We drank two bottles of beer a piece and started home. We had no arguments until we got near Spencer's Mill vicinity about a mile from Northport Ala. Ervin was driving the car fast and reckless and I became worried and I tried to get him to slow down but he wouldn't. Ervin ran a red light and thought the law was after him. I reached over and turned the switch off to the car and this caused Ervin to hit me. We got out of the car and Ervin hit me with his fist over the left side of my head. When he started coming toward me I reached in my right pocket and took out my knife. I opened it and warned him not to hit me, but he hit me anyway. I don't think he had a knife because I didn't see one and he hit me with his fist hard. ·I dont' remember cutting Mr. Smith because I was scared to death. It's possible that I did cut him, but I honestly don't remember of ever cutting him. If I did cut him, I am sorry because he is a good fellow and a good friend of mine and I would not have cut him for anything. I was so excited and scared I didn't know exactly what I did. I then went to the Bus Station and caught a bus for Cordova, Ala. I was arrested in Bessemer, Ala. and brought back and placed in .Tuscaloosa County jail.

The above statement has been read by me and it is true and correct in every detail. I solemnly swear that this is a true and voluntary statement made by me.

X       Cordes McClendon

Subscribed and sworn before me, W. F. Englebert, Notary Public, Tuscaloosa Co., Ala."

The court properly submitted the case to the jury under the evidence in this case. This the appellant admits in his brief.

■    The evidence was sufficient to sustain the verdict of the jury, and to support the judgment of conviction from which this appeal was taken.

The record is regular in every respect, and as no reversible error appears in any of the rulings of the court, the case is due to be affirmed. It is so ordered.

Affirmed.