276 So.2d 624

**Herbert H. KNIGHT, alias**

v.

**STATE.**

**4 Div. 133.**

Court of Criminal Appeals of Alabama.

Feb. 6, 1973.

Rehearing Denied March 13, 1973.

Smith & Smith, Dothan, for appellant.

William J. Baxley, Atty. Gen., and Samuel L. Adams, Asst. Atty. Gen., for the State.

## PER CURIAM.

The second count of an indictment returned by the Grand Jury of Houston County charged appellant with the murder in the first degree of his wife, Melba Joyce Knight, by shooting her with a pistol. The jury found appellant guilty of murder in the first degree as charged in this count and fixed his punishment at life imprisonment.

The trial judge, after due allocution, pronounced sentence in accordance with the jury's verdict and entered proper judgment from which this appeal was taken.

The scene of the alleged crime was at the modest home of appellant and the deceased at or near a fringe area of the City of Dothan. The time was shortly after midnight on Saturday morning, September 19, 1970. Appellant (whom we shall hereafter refer to as defendant) and his wife went to the home of their friends several miles distant for dinner on Friday night before the homicide on Saturday morning. After dinner they, with their friends, went to a football game, soon after which they returned to their home in Dothan arriving about 11:00 or 11:15 P.M. Their two year old daughter was at the home of Mrs. Knight's parents where she had been taken two or three days before the night of the fatal tragedy.

After their return home, Mrs. Knight, according to defendant's testimony, proposed to perform some household chores

but went to bed after defendant voiced objection. The defendant stated that he sat up for a short while watching television, after which he went to bed with his wife who was asleep and he did not awaken her. He stated that while he was asleep on the bed with his wife he was awakened by a noise in the house, that he got up and got his pistol from a drawer in the same room and went to investigate the noise.

Defendant testified that while making this investigation he ran afoul of a male person who had intruded into his home, that the two engaged in a scuffle, that he tried to shoot the intruder who grabbed his pistol, that the pistol was discharged during the scuffle and the bullet therefrom entered his wife and caused her death.

The district attorney for the State contended that defendant unlawfully and with malice aforethought as charged in the indictment killed his wife. The issue before the jury was the conflict of contentions; namely, whether the defendant intentionally shot his wife with intent to kill her or whether her death was an accident.

The State insisted defendant killed his wife, for one reason, to collect some life insurance which he had procured and to which he was the beneficiary. There was one life insurance policy in the sum of $10,000.00 with a double indemnity provision if she suffered death by accident. There was another policy of $5,000.00 and two more of $500.00 each.

The state proved by the manager of the district office of the insurer issuing the $10,000.00 policy that defendant had filed a claim in his office to collect this policy. There was no objection to this evidence. On cross-examination of this witness, the defendant adduced evidence that the claim was on file at the home office. On re-cross-examination, counsel for defendant interrogated the witness and obtained answers as follows:

"Q. Do you know as a matter of fact that this defendant here, Herbert Knight, made that claim? You weren't present when he made it, were you?

"A. No, sir.

"Q. In fact, the only way you know about it is someone handed it to you and said, 'That's it by Herbert Knight,' isn't it?

"A. The claim statement which is filed by our agent.

"MR. EARL SMITH: All right. I move to exclude that. There is a higher and better evidence of it. The best evidence is the claim itself. He is testifying about what somebody told him and it's not admissible.

"THE COURT: I overrule the objection."

It appears from the above that the witness never answered that "someone handed it" to him, nor did he say, "That's by Herbert Knight." His answer referred to a claim statement which was filed by the company's agent. Prior to this answer the witness had testified that he knew the claim was filed because it had crossed his desk. He never at any time testified that the agent told him that the defendant had filed the claim or signed it.

The claim in question was a collateral incident to the unlawful homicide in issue. The best evidence rule is not applicable to the claim. The State did not offer to prove the contents of the claim. Being a collateral incident the ruling of the trial court was not error. Pentecost v. State, 107 Ala. 81, 18 So. 146; Griffin v. State, 129 Ala. 92, 29 So. 783. Additionally, evidence of the claim was already before the jury without objection.

It appears from defendant's evidence that immediately after the pistol was fired and the intruder had escaped through a back door, he called the telephone operator and told her to send an ambulance and the police. Both responded soon thereafter. The police proceeded with an investigation before and after the ambulance had removed the body to a mortuary, there to

await the arrival of a state toxicologist from Auburn, who was trained in performing autopsies and in scientific investigation of cases relating to a homicide, as well as in other scientific areas.

The toxicologist performed an autopsy on the body of Mrs. Knight. He also went to the home of the deceased and defendant about 9:30 A.M., September 19, 1970, the day of the alleged offense. A city detective accompanied the toxicologist and was present when the toxicologist pursued an investigation relating to the homicide. He obtained a kitchen knife from a kitchen table. There was a break of several hours between the police officers' preliminary investigation and that of the toxicologist. The defendant was present in his home when the toxicologist made his investigation as well as when the police officers arrived soon after Mrs. Knight was shot.

State's Exhibit No. 4, a photograph of the back door, reveals a rectangular hole in a lower pane of glass, which pane was also cracked. Around this hole and over the cracked portion some masking tape adhered. The toxicologist testified as to the dimensions of the hole and its height above the door knob. He further testified that the fibres on the knife were the same as those on the masking tape found on the pane of glass in the door.

The defendant testified, and offered supporting testimony, that he had used the knife to cut some masking tape which he had placed over or around a defect in an air conditioner in an automobile he once owned, and which he had sold for junk prior to the night of the homicide.

On cross-examination defendant denied the State's contention that on the night of his wife's death he got the kitchen knife and slit the masking tape on the window pane so it would appear that a burglar had reached through the hole, turned the knob, and entered the house. He also offered evidence by a former occupant of the house that she and her husband taped up the broken window pane.

Defendant here contends that the toxicologist obtained the knife by means of an illegal search, that his evidence with respect to the fibre and the knife was inadmissible, and that the trial court committed reversible error in overruling his objection thereto. Duncan v. State, 278 Ala. 145, 176 So.2d 840.

■ We again note that the toxicologist testified that he removed the knife about 10:45 A.M. and that the defendant was present in front of the house at the time. The defendant did not testify that he had withdrawn the invitation to the police to enter his home, nor did he protest such entry when the toxicologist and the detective arrived.

Here, without dispute, the police came to defendant's home, the scene of the homicide. Their presence was requested by the defendant who reported the tragedy to the telephone operator. The officers were confronted by the dead body of the victim, together with circumstances which made it their duty to investigate. The fact that the investigation was interrupted or delayed for several hours pending the arrival of the toxicologist did not preclude a resumption of the search for evidence as to the illegality vel non of the death. The toxicologist was trained in scientific research and his ability in his field was vastly superior to that of the average police officer. The discontinuity of the officers' search was due to the need of the expertise of the toxicologist. This delay did not undercut the legal right of the police officers to complete their investigation within a reasonable time. State v. Oakes, 129 Vt. 241, 276 A.2d 18. No renewed authority documented by a search warrant was necessary. The ruling of the trial court in overruling defendant's objection was free of error.

■■ The State's evidence and that of defendant without dispute show that Mrs. Knight was killed by a bullet which was propelled into her body from a pistol fired while in the hands of defendant. Every

killing is unlawful unless expressly excused or justified by law. The homicide being shown, it was incumbent on the defendant to bring forth evidence in mitigation, excuse or justification unless shown by the evidence produced against him. Wallace v. State, 41 Ala.App. 65, 124 So.2d 110; Champion v. State, 35 Ala.App. 7, 44 So.2d 616; McMurtrey v. State, 39 Ala.App. 319, 101 So.2d 88.

■ "Legal malice" as applied to a homicide is an intent to unlawfully take the life of another without legal excuse or justification. *Wallace,* supra. Malice may be presumed from the use of a deadly weapon unless the circumstances of the killing disprove malice or, as otherwise stated, unless the evidence which proves the killing rebuts the presumption. *Wallace,* supra.

■ The jury was empowered to reject the contention of the defendant and to conclude from all the evidence that, beyond a reasonable doubt, defendant did willfully, with premeditation, deliberation and malice, kill Mrs. Knight. This conclusion having been reached in the manner required by law, we are unwilling to disturb the verdict.

Defendant here complains in his counsel's brief that the court erred in not requiring the prosecution to produce the knife found in the kitchen drawer with masking tape fibres on it. So far as we have found in the record the knife was not offered in evidence, nor were the fibres found thereon. The pane of glass upon which the State asserted there was masking tape was not offered, although a photograph of the door containing the pane of glass was offered.

■■ The denial of defendant's motion for discovery and to produce all tangibles was not error. Defendant lived in the house. A reasonable inference may be drawn that he was acquainted with the door, the pane of glass, and the masking tape adhered thereto; as well as with the condition of the pane. He was also acquainted with the knife found in the kitchen drawer. He testified as to using this knife to cut masking tape for use in his automobile. Defendant also owned the pistol and the cartridges in the chamber. He suffered no surprise by not being permitted to inspect these articles. He was fully acquainted with them. Inspection would not have informed him as to the relevancy of the articles. The prosecutor was under no duty to inform the defendant as to his theory of relevancy or to draw a blue print for him as to the State's plan of prosecution.

We think our Supreme Court's observation in Sanders v. State, 278 Ala. 453, 179 So.2d 35, has application here:

"Before arraignment, Sanders filed a motion 'to require the solicitor to furnish to his attorneys any information held by him in the form of purported confessions, statements by witnesses, charts, diagrams, hospital records, court records, notes from the Grand Jury proceedings or other information held by him * * *.' This motion was granted by the trial court 'only as to all statements, reports, notes, and charts of all witnesses who testified at the preliminary hearing or the Grand Jury against defendant and of Dorothy Jo Patton whether she testified or not, and alleged confessions of defendant.'"

The trial court did not err in denying defendant's motion to require the prosecution to produce the tangibles, supra, for inspection.

■ Defendant next complains in brief that the prosecutor made a personal attack on his counsel "by calling him by name" and making the following remarks, "If that is the way you feel, Mr. Smith, then the next time that you are in trouble, all I can say is call a hippie." The trial court overruled the objection with the statement, "I think he has a right to answer your argument." Being a reply in kind, according to the court, the ruling was not error. Gills

**44**

v. State, 35 Ala.App. 119, 45 So.2d 44, cert. denied 253 Ala. 283, 45 So.2d 51.

We are impressed from the record that the trial court did not commit reversible error in any of its rulings and that the adjudication of defendant's guilt of murder in the first degree should be affirmed. It is so ordered.

Affirmed.

All the Judges concur.