[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1145 
Marcell Leonard was convicted of attempted murder and sentenced to 50 years' imprisonment. Thirteen issues are raised by Leonard, the appellant, on this appeal from that conviction.
 I
The defendant had been living with Barbara Jenkins. He was charged in this case with stabbing her five-year-old son, Prentis Jenkins.
At trial, the young victim testified that the defendant stabbed him and his ten-year-old brother, Nelson. On cross-examination, the victim admitted that his grandmother and the prosecutor had gone over his testimony with him, and that his mother "had talked to [him] some."
The defendant maintains that the prosecutor was erroneously allowed to bolster the victim's credibility with hearsay information when the following occurred on redirect examination of the victim by the prosecutor:
 "Q. When you talked to your grandmother and your mother, and you talked to me, did we all tell you to tell the truth?
"A. Yes, sir.
"MR. POOL [Defense Counsel]: Object, Your Honor.
"THE COURT: Overruled.
"MR. MADDOX [Prosecutor]: No more questions."
The alleged error has not been preserved for review by timely and proper objection.
 "When a question is asked of a witness calling for inadmissible matter, it is mandatory upon the party against whom it is offered to object after the question but before the answer. The effect of such a rule is that a timely objection is a condition precedent to assigning the admission of such an answer as grounds for error on appeal." C. Gamble, McElroy's Alabama Evidence § 426.01(3).
Moreover, since defense counsel elicited part of the conversations the victim had with his mother, his grandmother, and the prosecutor, the State was entitled to bring out the related remainder of the conversations. McElroy at § 316.01.
The defendant also complains about the following question to Montgomery Police Detective E.B. Spivey on redirect examination by the prosecutor:
 "Q. But there are at least two other people that could have testified to what the defendant said?
"A. Yes, sir.
"MR. POOL: Object, Your Honor.
 "MR. MADDOX: No more questions, Thank you very much."
At trial, Detective Spivey testified to the contents of the statement made by the defendant. The prosecutor's question has reference to the two other police officers who were present when the confession was made.
Here, not only was the objection untimely, McElroy at § 426.01(3), and general *Page 1146 
with no specific grounds, McElroy at § 426.01(10), but there was no adverse ruling on the objection. "An adverse ruling by the trial judge is a preliminary requirement to preservation of error and appellate review." Van Antwerp v. State,358 So.2d 782, 790 (Ala.Cr.App.), cert. denied, Ex parte Van Antwerp,358 So.2d 791 (Ala. 1978). See also Morris v. State, 268 Ala. 60,66, 104 So.2d 810 (1958).
 II
On direct examination, Ms. Jenkins testified, without objection, that, two days before the stabbing, the defendant put a knife to his throat and told her that if she left him he would kill her and kill himself. The prosecutor then asked, "Did the [defendant], on another occasion, make any other threats to you, such as killing those who you loved?" The trial judge sustained defense counsel's objection and instructed the prosecutor, "Don't lead." Ms. Jenkins then testified without objection that, on the day of the stabbing, the defendant "told [her] if [she] left that he would kill me or himself or someone close to me."
Again, the defendant has no adverse ruling from which to appeal. Although the prosecutor was guilty of leading his own witness, he was not, by this question, guilty of "highly improper and prejudicial tactics" as alleged by the defendant. "The trial court has a vast discretion in the allowance or disallowance of leading questions." McElroy at § 121.05(3).
 III
In the prosecution of the defendant for the attempted murder of her son Prentis, Ms. Jenkins was properly allowed to testify that her other son, Nelson, was stabbed nine times and died. "[I]t is generally within the res gestae to prove that other persons were killed or injured by the accused at the same time and place as the victim of the now-charged crime." McElroy at § 70.01(12)(b).
 IV
The defendant contends that he was denied his right to effective cross-examination from the following incident which occurred on cross-examination of Ms. Jenkins:
 "Q. And he [the victim] said that he didn't remember, and that is when you all suggested some things to him?
"A. No, we never —
"MR. MADDOX: Object.
"A. We never suggested nothing to him.
"THE COURT: I sustain.
 "A. Because he told the police what happened on his way to the hospital."
Defense counsel did not pursue this matter. Because there was no offer of proof, this issue is not preserved for review.Ex parte Glover, 508 So.2d 218, 220 (Ala. 1987).
 V
On direct examination by the prosecutor, Montgomery Police Corporal Charles Miller was describing a videotape of the crime scene when the following occurred:
"Q. What is there on the floor there, sir?
"A. This is blood.
 "MR. POOL: Object, Your Honor; he is not qualified.
"A. It is what appeared to me to be blood.
"THE COURT: Overruled."
In the subsequent course of the trial, an expert forensic serologist positively confirmed Corporal Miller's identification of the substance as blood.
The defendant now argues that the State failed to lay a proper predicate to qualify the officer as an expert. Such objection is without merit. "[I]t has been definitely settled [that] the identification of a substance as blood has often been permitted to be made by a non-expert." McClendon v. State,33 Ala. App. 611, 613, 36 So.2d 580 (1948), cert. denied,251 Ala. 129, 36 So.2d 583 (1948).
On another occasion, Corporal Miller was also permitted to testify, over objection, based on his "opinion and experience as having seen this before," as to the angle and velocity of blood splatters on the *Page 1147 
ceiling in the residence where the crime occurred. Corporal Miller testified that he had attended a "Blood Splatters Course" consisting of a "speech [which] lasted four hours, and we had had hands-on training where we actually did the splatters and the measuring and did our angles for approximately six hours." He had also investigated "hundreds" of crimes involving blood splatters.
"The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for probable abuse." McElroy at § 127.01(5). Here, we find no such abuse.
 VI
The crime occurred on June 27, 1987. The trial judge sustained the State's objection and would not allow defense witness Bridgett Leonard to answer the question, "Do you know, Bridgett, whether or not back in June of 1987 Ms. [Jenkins] had a habit of smoking marijuana?"; would not allow defense witness Patricia Smith to answer the question, "As of June, 1987, Ms. Smith, can you tell us whether or not Barbara Jenkins was heavy into drugs?"; and sustained the prosecutor's objection and would not allow defense witness Ezell Smith, Jr., to answer the question, "I will ask you specifically before June 27, 1987, had she ever come to you wanting to purchase cocaine?"
The defendant argues that these questions were proper impeachment to show Ms. Jenkins' incapacity at the time of her observation of the events about which she testified. On cross-examination, Ms. Jenkins denied that she ever purchased a pound of marijuana or that she had illegal drugs in her house on the day of the incident.
"The use of [drugs] cannot be introduced to impair the credit of a witness unless it be shown that he was under the influence of the drug at the time of testifying or at the time of the occurrence of the event to which he is testifying, or that his mind was generally impaired by the use of said drug."Standard Oil Co. v. Carter, 210 Ala. 572, 574, 98 So. 575
(1923); Gratton v. State, 456 So.2d 865, 868 (Ala.Cr.App. 1984). See McElroy § 141.01(3).
We have examined the record of each of the three incidents of alleged error and find no showing or offer of proof made by defense counsel as to what he expected the evidence to show or hoped to prove. Without a proper predicate both as to the specific time involved and as to the nature of the anticipated testimony, the questions were improper.
Moreover, any error in the refusal of these questions was only harmless under Rule 45, A.R.A.P., because of other testimony from one these witnesses. Ms. Smith testified that Ms. Jenkins' "usual condition" during the two weeks prior to the date of the crime was "high . . . Well, she always had a lot of weeds around. She also offered me cocaine, . . ." On cross-examination, Ms. Smith testified that marijuana was at Ms. Jenkins' house "all the time," and that Ms. Jenkins offered her some cocaine and showed it to her. On redirect examination, she stated that "every time" she saw her, Ms. Jenkins was "high."
The improper exclusion of evidence which is merely cumulative of other evidence of the same nature does not constitute reversible error. Ex parte Lawson, 476 So.2d 122 (Ala. 1985). The rejection of evidence is not prejudicial where the same facts are proved by the same or other witnesses. Houston v.State, 203 Ala. 261, 263-64, 82 So. 503 (1919). " '[A]n error in excluding evidence as to a certain fact is harmless where the fact is established by other evidence.' " Harper v. BaptistMedical Center-Princeton, 341 So.2d 133, 135 (Ala. 1976).
 VII
The defendant argues that a mistrial should have been granted because of the prosecutor's conduct on two specific incidents.
In making an objection to defense counsel's direct examination of witness Patricia *Page 1148 
Smith, the prosecutor stated, "Could we have the witness instructed, Judge — I know she is well versed; but could —" Upon objection by defense counsel, the prosecutor withdrew his remark and apologized. The trial judge also instructed the jury to disregard.
"A mistrial will not be granted on motion of defendant where the court has sustained his objection to alleged improper argument and excluded it from the jury's consideration, unless it clearly appears that the defendant's rights have been so prejudiced as to render a fair trial a matter of grave doubt."Watson v. State, 266 Ala. 41, 44, 93 So.2d 750 (1957). Here, the actions of the trial judge created a prima facie presumption against error and cured the effect of the prosecutor's comments. Burkett v. State, 215 Ala. 453, 454,111 So. 34 (1927).
The other instance of alleged prosecutorial misconduct occurred when the prosecutor asked a character witness for the defense, "You don't have any idea what he did to a nine-year-old boy and five-year-old boy on June 27, 1987, with this knife; do you?" The trial judge sustained defense counsel's objection and instructed the prosecutor not to make "side comments." Defense counsel did not request a mistrial or request further curative action. On that basis, we find no error.
 VIII
The defendant argues that his confession was involuntary and the product of a "weakened and painful [physical] condition, physical abuse, and the denial of medical treatment."
At approximately 10:00 p.m. on June 27, 1987, four hours after the crime, the defendant, accompanied by his uncle, voluntarily appeared at the Montgomery Police Department and surrendered. The State's evidence shows that the defendant was walking and appeared "slightly fatigued" but not "ready to collapse." The defendant had two puncture wounds to his chest but was not bleeding. He was placed under arrest for murder and given his Miranda rights. He stated he understood those rights and agreed to make a statement. The only question asked the defendant was to the effect of "what happened?" The defendant then made a statement which took "approximately from 60 to 90 seconds." After this statement, the defendant complained of chest pains.
Although the defendant was not given any medical attention or treatment before completing his statement, the evidence does not support a finding of the denial of medical treatment. Montgomery Police Detective E.B. Spivey testified: "I did not interrogate him; I asked him what happened on the case, at which time he gave me a voluntary statement. At the same time the paramedics were in route to Headquarters."
A medical physician examined the defendant later that same night. He testified that the defendant had "minor . . . puncture wounds of the chest wall." In the doctor's opinion, these wounds were self-inflicted. He testified that the defendant was "alert and oriented."
The defendant testified at the voir dire hearing on the motion to suppress the confession. His testimony was in direct conflict with that presented by the State, and, if believed, would require the suppression of his confession. In weighing the evidence of voluntariness and involuntariness, the trial judge was presented with a question of credibility. Player v.State, 421 So.2d 1338, 1343 (Ala.Cr.App. 1982). "Where the voluntariness inquiry presents conflicting evidence and the trial judge finds that the confession was voluntarily made, great weight must be given his judgment." Williams v. State,461 So.2d 834, 838 (Ala.Cr.App. 1983), reversed on other grounds, Ex parte Williams, 461 So.2d 852 (Ala. 1984). Here, the trial judge's determination of voluntariness is supported by substantial evidence. Our independent weighing of the totality of the circumstances convinces us that his decision is due to be upheld by this Court.
 IX
The defendant maintains that his right of cross-examination was infringed by *Page 1149 
the following incident, which occurred on cross-examination of Detective Spivey:
 "Q. [Defense Attorney Pool]: To your knowledge, with regard to these various court appearances that you've been involved in concerning Marcell Leonard, have either of those gentlemen [police officers Marshall and Smith] got up and testified that they were present when you took a statement from Marcell Leonard?
 "MR. MADDOX [prosecutor]: I object; he would have been under the Rule and wouldn't have been present for the trial.
"THE COURT: Sustained.
 "MR. POOL: Well, I don't know whether he was under the Rule or not.
"MR. MADDOX: I do.
"THE COURT: Anything further?
 "MR. POOL: Yes, sir, Your Honor. [defense counsel continues his cross-examination]."
At the time of the trial now under review, the defendant had already been convicted of the murder of ten-year-old Nelson Jenkins. On cross-examination, Detective Spivey testified that this was the third time he had testified in court with regard to the defendant, but that this was the first time he had testified about the defendant's confession. Earlier, he had testified that Sergeant D.T. Marshall and Detective S.S. Smith were present when he took the defendant's statement. On redirect examination, Spivey indicated that he had never previously testified about the defendant's statement because the prosecutor had not asked him about the statement.
The defendant was not denied his right to conduct a searching and thorough cross-examination of Detective Spivey. Because the question called for irrelevant matter, it was properly within the discretion of the trial judge to sustain the objection.McElroy at § 136.01.
 "Whether the patrolman [who testified at trial to the defendant's oral confession] did or did not testify at the preliminary hearing or before the grand jury sheds no light on the issue of defendant's guilt or the credibility of the patrolman.
 * * * [T]he failure of the patrolman to testify before the grand jury or on preliminary hearing may well have been because the solicitor decided that the patrolman's testimony was unnecessary on those occasions.
 "We are of opinion that the court did not err in sustaining the objections to the questions asking the patrolman whether he had testified earlier." Hutto v. State, 278 Ala. 416, 420, 178 So.2d 810
(1965).
See also Mitchell v. State, 94 Ala. 68, 10 So. 518, 520 (1891).
 X
The trial judge properly denied the defendant's motion for a change of venue based on alleged prejudicial pretrial publicity. The crime occurred in June of 1987. The defendant was tried for the murder of the brother of the victim in this case in November of 1987. The trial judge continued the present case for six months until May of 1988, instead of moving the trial to another jurisdiction. Only four venire members indicated they had heard or seen any publicity or had any knowledge about the case. Only one of those members indicated that she "didn't think" she could give the defendant a fair trial because of what she had "seen on the news and just hearsay." That venire person was excused.
We have examined the four newspaper articles attached to the defendant's motion for change of venue. Three of those articles were published on November 16th and 17th, 1987; the fourth on June 27, 1987. No article is inherently prejudicial.
Here, the defendant failed to prove "that there existed actual prejudice against . . . [him] or that the community was saturated with prejudicial publicity." Ex parte Grayson,479 So.2d 76, 80 (Ala.), cert. denied, Grayson v. Alabama,474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985). "Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue." Grayson, 479 So.2d at 80.
Since there is nothing in the record to suggest that the jurors could not render a verdict based solely on the evidence *Page 1150 
presented at trial, and since it has not been shown that the trial judge abused his discretion in denying the motion for change of venue, his decision must be upheld.
 XI
After the jury was "struck, impaneled and sworn," defense counsel moved "to discharge the jury on the basis that the Assistant District Attorney has used eight of his ten peremptory strikes to strike blacks from the jury." This objection was untimely. "[I]n order to preserve the issue for appellate review, a Batson [v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)] objection, in a case in which the death penalty has not been imposed, must be made prior to the jury's being sworn." Bell v. State, 535 So.2d 210 (Ala. 1988).
Furthermore, we have examined the prosecutor's stated reasons for using eight of his peremptory strikes to remove blacks from the jury venire and find that they are race-neutral. Those reasons are: (1) knew the defendant; (2) thought to have been previously charged with manslaughter and traffic violations, including one DUI in 1987; (3) charged with making false statements in municipal court in 1987; (4) was 69-year-old who stated that she "would have difficulty viewing bloody scenes because she had a nerve condition"; (5) was 66 years old with two prior gambling convictions; (6) seemed "alarmed and upset" and "rather hostile" when venire was informed jury would be sequestered; (7) was 63-year-old who seemed "slow and inattentive," "lacking in perception," and "a little bit confused"; and (8) was 77 years old.
The record shows that defense counsel used five of his ten strikes to remove blacks, that both the defendant and the victim were black, that the "only two actual fact witnesses" were black, that three blacks were on the jury, and that the alternate juror was black. On these facts, we find noBatson violation. See Ex parte Lynn 543 So.2d 709 (Ala. 1988);Mathews v. State, 534 So.2d 1129 (Ala.Cr.App. 1988); Nesbitt v.State, 531 So.2d 37 (Ala.Cr.App. 1987).
 XII
We find that the trial judge did not err in failing to suppress the confession due to the prosecutor's alleged misconduct.
The record reflects that there was some confusion among the court, defense counsel, and the prosecutor about the State's use of the defendant's confession. Defense counsel argued that, at the pretrial hearing on his motion to suppress the confession, the prosecutor positively represented to the court that he would not be using any statement of the defendant. The prosecutor stated that he told the court that "if [he] decided to use it [he] would notify the court and we could have a hearing at that point."
The prosecutor did not mention the statement in his opening argument or in his case in chief. He initially mentioned it on cross-examination after the defense had called as a defense witness the investigating officer who took the statement. Defense counsel objected and, outside the presence of the jury, moved to suppress the defendant's statement. After inquiry into the prosecutor's pretrial representations regarding the use of the confession, the trial judge found that the prosecutor did not "deliberately" do "anything harmful." After an evidentiary hearing on voluntariness, the prosecution was allowed to introduce the confession into evidence. The defense was not surprised by the existence of the confession. Defense counsel, at one point, stated that he had seen the statement and that was the reason he filed the motion to suppress. He later stated that he was not "even sure" that he had the confession at the time he filed his motion.
It appears to this Court that the trial judge was fully informed of all the circumstances surrounding this issue and that he overruled the requested mistrial after careful consideration of the merits of the defendant's allegations and after an evidentiary hearing on the voluntariness of the confession. Furthermore, this matter was raised and argued at the hearing on the defendant's *Page 1151 
motion for new trial. The trial judge found that neither the prosecutor nor defense counsel had told "any bald-faced-lie," although each had accused the other of dishonesty. Apparently, the motion for new trial was denied by operation of law, Rule 13(d), A.R.Cr.P.Temp., as the record contains no ruling by the trial judge on that motion.
Affirmative misrepresentation of, and deliberate deception by, the prosecutor cannot be tolerated and must be dealt with severely. The prosecutor can neither take unfair advantage of the defendant nor strike foul blows. Arant v. State, 232 Ala. 275,280, 167 So. 540 (1936); Sprinkle v. State, 368 So.2d 554,560-61 (Ala.Cr.App. 1978), cert. quashed, Sprinkle v. State,368 So.2d 565 (Ala. 1979). While the prosecutor is under no duty to "draw a blue print for [the defendant] as to the State's plan of prosecution," Knight v. State, 50 Ala. App. 39,43, 276 So.2d 624, cert. denied, 290 Ala. 368, 276 So.2d 628
(1973), if he undertakes to do so, he may not deliberately mislead the defendant. "It is fundamentally unfair to conceal, or refuse to turn over to defense counsel, or to misrepresent the contents of a copy of the accused's statement." Peal v.State, 491 So.2d 991, 1001 (Ala.Cr.App. 1985).
Here, the evidence supports the trial judge's implicit findings that there was no deliberate deception or misrepresentation by the prosecutor. Although it is clear that there was an obvious misunderstanding, this case does not involve the prosecutor's breach of his promise of future conduct. Cf. Santobello v. New York, 404 U.S. 257,92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
We view this issue as one akin to the prosecutor's duty to disclose under Rule 18, A.R.Cr.P.Temp. In such a case, "[t]he imposition of sanctions upon noncompliance with a court's discovery order is within the sound discretion of the court."McCrory v. State, 505 So.2d 1272, 1279 (Ala.Cr.App. 1986). Based on the circumstances of this case and the legal principles set out above, we find that the trial judge did not abuse his discretion in finding no prosecutorial misconduct and in admitting the confession into evidence.
 XIII
The defendant contends that the prosecutor, in his closing argument to the jury, commented on his failure to testify. The portion of the record on which this claim is based shows the following:
 "MR. MADDOX [prosecutor]: He didn't prove whether the defendant was wearing the bluejean shorts or not when he stabbed those children. He didn't want to get into that; so he didn't bring them in.
 "MR. POOL [defense counsel]: Your Honor, we object. The defense did not have equal access to tangible items of evidence.
"MR. MADDOX: Supply [reply] in kind.
"THE COURT: Overruled."
The record also shows that, before the prosecutor made this remark, defense counsel had made the following comment in his closing argument to the jury:
 "MR. POOL: Probably the biggest travesty on justice was the matter about the bluejean shorts, too bulky to bring into the Courtroom. Why are those bluejean shorts too bulky to bring into the Courtroom?"
"Counsel may comment on the failure of his adversary to produce evidence . . . when the comment is pertinent to answer an argument made by opposing counsel." Jarrell v. State, 251 Ala. 50,56, 36 So.2d 336 (1948); Gibson v. State, 347 So.2d 576,579-80 (Ala.Cr.App. 1977).
Moreover, the present issue has not been preserved for appellate review. The assignment of a single objection is a waiver of all other objections not assigned. Harbin v. State,15 Ala. App. 57, 59, 72 So. 594 (1916). "[B]y assigning specific grounds of objection the defendant waived all others." Gamblev. State, 19 Ala. App. 590, 591, 99 So. 662 (1924). A defendant is bound by the grounds of objection raised at trial and cannot change them on appeal. Watkins v. State, 219 Ala. 254, 255,122 So. 610 (1929). "[I]f a party makes a specific *Page 1152 
objection upon untenable grounds, which is overruled, then he cannot appeal by assigning a tenable ground upon which the evidence is inadmissible." McElroy at § 426.01(11).
This Court has thoroughly reviewed each instance of alleged error asserted by the defendant. The defendant received a fair trial, and the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.