BOWEN, Presiding Judge.
Michelle Marie Bankston, the appellant, was convicted for the murder of her husband, Joe Bankston, and was sentenced to 25 years’ imprisonment. She raises four issues on this appeal from that conviction.
I.
The appellant argues that her trial counsel was ineffective because counsel failed to make a motion pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), failed to object to the admission of certain photographs, failed to seek a change of venue, and failed to call a witness who could allegedly tend to incriminate a person other than the appellant.
This issue of counsel’s alleged ineffectiveness was never presented to the trial court and is therefore not reviewable in this appeal. In Ex parte Jackson, 598 So.2d 895, 897 (Ala.1992), the Alabama Supreme Court “reaffirm[ed] the principle that ‘ “claims of ineffective assistance of counsel may not be considered for the first time on direct appeal.” ’ ”
“[W]e will not make exception to the rule that a claim of ineffective assistance of counsel may not be considered on appeal if it was not first presented to the trial court. We encourage counsel, whenever possible, to ascertain any possible defect in the trial process and to make an issue of that defect in an appropriate motion for a new trial. Failure to include a reasonably ascertainable issue in a motion for new trial will result in a bar to further argument of the issue on appeal and in post-conviction proceedings.”
Jackson, 598 So.2d at 897.
Appellate counsel was appointed after the motion for new trial had been filed by trial counsel but 21 days before the hearing was held on that motion. We note that at the time appellate counsel was appointed, there existed a procedure whereby the time for the filing of a motion for new trial could have been extended and a copy of the reporter’s transcript obtained in order to allow newly appointed counsel to raise the issue of ineffective assistance of trial counsel. Ex parte Jackson, [Ms. 1901438, 1992 WL 35399, February 28, 1992], withdrawn and replaced by Ex parte Jackson, 598 So.2d 895 (Ala.1992).[1]
II.
The appellant contends that a search of her residence was illegal.
Around 11:00 on the night of December 31, 1990, the appellant requested another person to telephone the police in order to get help for her husband at their residence. The police arrived shortly thereafter and discovered the victim dead in the bathtub. The crime scene was “processed” and a search of the residence did, in fact, occur. On January 2, 1991, the appellant, with the *117 advice of her attorney, gave her consent for the police to search her residence. At the hearing on the motion to suppress, the prosecutor established that after the consent to search had been obtained, the police would have discovered the same evidence seized before that consent had been obtained. R. 185-91, 212.
Under these facts, the police were justified in entering the house in an effort to protect the person of the appellant’s husband and in seizing “any evidence that [was] in plain view during the course of their legitimate emergency activities.” Mincey v. Arizona, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). Accord State v. Spears, 560 So.2d 1145, 1148-51 (Ala.Cr.App.1989); Terry v. State, 469 So.2d 1359, 1360-61 (Ala.Cr.App.), cert. denied, 474 U.S. 826, 106 S.Ct. 84, 88 L.Ed.2d 69 (1985). However, in searching certain areas inside that residence, such as a closed briefcase and a kitchen cabinet, the police exceeded the scope of what was reasonably necessary in order to carry out their legitimate emergency activities. Spears, supra. See Florida v. Jimeno, — U.S. -, -, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991) (“The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of ‘objective’ reasonableness — what would the typical reasonable person have understood by the exchange between the officer and the suspect?”).
Nevertheless, the fruits of the search are admissible under the inevitable discovery exception to the requirement of a search warrant. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). See also Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (independent source doctrine).
There is absolutely no indication that the appellant’s consent was obtained through the exploitation of any evidence or information illegally seized. Compare Ex parte Yarber, 375 So.2d 1231, 1234-35 (Ala.1979) At the hearing on the motion to suppress, defense counsel stipulated that the consent to search was “valid” and that the appellant “voluntarily and knowingly” signed the consent to search form. R. 182.
The motion to suppress was properly denied.
III.
This Court rejects the appellant’s contention that she was entitled to a mistrial because the prosecutor commented on the statements made by the victim to his attorney after the trial court had granted the appellant’s motion in limine regarding these statements.
From the trial court’s instructions to the jury to “disregard any statements as to what Mr. Bankston told the attorney,” this Court can only infer that the prosecutor did make some comment in that regard. R. 248-49. However, the record does not reveal the content of the prosecutor’s remark. “It is well established that objectionable remarks should be fully quoted, or substantially so, in an objection to improper argument.” Jones v. State, 460 So.2d 1382, 1383 (Ala.1984).
“ ‘A mistrial will not be granted on motion of defendant where the court has sustained his objection to alleged improper argument and excluded it from the jury’s consideration, unless it clearly appears that the defendant’s rights have been so prejudiced as to render a fair trial a matter of grave doubt.’ Watson v. State, 266 Ala. 41, 44, 93 So.2d 750 (1957). Here, the actions of the trial judge [in sustaining the defendant’s objection and in instructing the jury to disregard] created a prima facie presumption against error and cured the effect of the prosecutor’s comments. Burkett v. State, 215 Ala. 453, 454, 111 So. 34 (1927).”
Leonard v. State, 551 So.2d 1143, 1148 (Ala.Cr.App.1989). “In determining whether the accused was prejudiced by prosecu-torial misconduct, ‘we must ordinarily give great deference to the ... judge’s handling of the alleged misconduct during the trial. The ... judge is ordinarily in a much better position to understand the circumstances surrounding the alleged misconduct and to *118 evaluate its impact.’ ” Wysinger v. State, 448 So.2d 435, 439 (Ala.Cr.App.1983).
The motion for mistrial was properly denied.
IV.
Applying the principles collected in Cox v. State, 585 So.2d 182, 203-05 (Ala.Cr.App.1991), cert. denied, — U.S. -, 112 S.Ct. 1676, 118 L.Ed.2d 394 (1992), we reject the appellant’s argument that the evidence is insufficient to support her conviction for the murder of her husband. The State’s evidence in this case, unlike that presented in Johnson v. State, 594 So.2d 1245 (Ala.Cr.App.1991), cert. denied, 594 So.2d 1252 (Ala.1992), did create a question for the jury of the appellant’s guilt or innocence.
Viewing the evidence in the light most favorable to the prosecution, the jury could have made the following findings. The murder occurred sometime before 11:00 on the night of December 31, 1990. The appellant and the victim were alone in their residence that night. They had been married on November 21, 1990, after having dated for one month. On the day of the marriage, the victim received $77,190.89 from his attorney as his portion of the proceeds from the settlement of a civil law suit. At least $60,439 of that amount had been spent by the time of the victim’s murder.
The appellant told the police that her husband was killed by two masked men who broke into her home and knocked her out. She claimed that her husband was a “hit man” for the CIA, although that fact was disputed by the victim’s brother. The victim had been shot four times with a .45 caliber semi-automatic pistol, apparently while he was showering. That pistol was discovered outside the house lying in the grass. When the body was discovered, the cold water was running. There was no evidence of a struggle or a fight inside the residence, which was described as “neat in appearance.” There was no sign of any forced entry into the residence.
There was evidence that certain items had recently been placed in the washing machine, including a pair of sweat pants, socks, towels, and a sheet. A pair of disposable “throw-away” surgical gloves and a .45 caliber shell casing were also in the washing machine.
Shortly after some shots were fired, the appellant appeared at a neighbor’s door. The appellant had duct tape over her mouth and her hands were bound by “toy” handcuffs. After the neighbor removed the duct tape from her mouth, the appellant asked him to call the police and to help her husband. There is evidence from which the jury could reasonably have concluded that the appellant herself could have removed the tape from over her mouth, that the handcuffs could have been just “popped off,” and that the duct tape over her mouth was taken from a roll found in the appellant’s residence.
The appellant was considered a “victim” by the police immediately after the murder. However, the appellant became a “suspect” due, at least in part, to the inconsistencies between the statement the appellant gave the police at the hospital and the one subsequently given at the police station. In her statement at the hospital, the appellant claimed that she did not know anything about weapons.
From the following facts the jury could have reasonably concluded from that the appellant had not been knocked out: the appellant did not have any type of serious head injury and appeared to have only a “small area of swelling and tenderness” on her forehead; she was coherent and could answer questions immediately after the incident occurred; and her “hyperventilation was intermittent, which is not normally what [is seen] in a patient that’s truly hyperventilating.” R. 329.
In November 1990, the appellant told a student with whom she attended a college class that she worked with the FBI. On another occasion, she told that same student that she “worked with the CIA and with the IRS.” R. 348. When that student would not stop flirting with the appellant, she told him she would “shoot [him] if ... [he] didn’t leave her alone.” R. 350-51. *119 On that occasion, the student took a loaded semi-automatic pistol out of the appellant’s purse, removed the clip, then handed it back to the appellant. At trial, the student identified the murder weapon as “looking like” the pistol he removed from the appellant’s purse. R. 351.
On December 31, 1990, the appellant told the victim that she “bet” he would never see the “deer horns” he was having mounted. R. 277-78.
Two or three months before she met her husband, the appellant told a fellow employee that “she had seen this movie on T.V. It was called .The Black Widow. And that this was a movie about a woman who married rich men and killed them for their money. And she commented that maybe this was something that she ought to try.” R. 510. After the appellant’s marriage, that same employee observed a pistol in the new automobile that the appellant was driving. On that occasion, the appellant told the employee, “if anything should ever happen to Joe, don’t come calling me the Black Widow.” R. 513.
The owner of an auto parts and repair business testified that when the appellant began dating the victim, the appellant owed him between $1200 and $1300 for work performed on her automobile. After the appellant refused to pay, the auto parts dealer “reminded” her of her debt, and the appellant became hostile and told him she would get “the damn money.” R. 265. Before the appellant married the victim, she knew “that he was fixing to come into a claim, a large amount of money she felt like.” The appellant also told the auto parts dealer that she was attempting to become a state trooper.
“While not alone sufficient to justify a conviction, motive may strengthen circumstantial evidence. The fact that the deceased was last seen in the presence of the accused is also a circumstance to consider.... A false explanation given by the accused of any suspicious fact or circumstance tending to connect him [or her] with the offense is admissible in evidence against him [or her].... The jury may properly consider conflicting statements as indicating a consciousness of guilt.”
Cumbo v. State, 368 So.2d 871, 876 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).
However, the appellant testified and presented evidence in her own behalf, and, depending on which witnesses the jury believed, there were also facts from which the jury could have found the appellant not guilty. There was no positive direct evidence that the appellant shot the victim. All the evidence against the appellant was circumstantial.
“[A] conviction based solely on circumstantial evidence can be sustained only if the jury could have reasonably found that the State’s evidence excluded every reasonable hypothesis except that of the defendant’s guilt.... A possibility, even a probability, that the crime occurred in the way the State alleges is not enough to support a conviction, because ‘[m]ere possibility, suspicion, or guesswork, no matter how strong, will not overcome the presumption of innocence.’ ... If the circumstantial evidence can be reconciled with a theory that someone other than the accused might have done the criminal act, the defendant’s conviction must be reversed.
[[Image here]]
"... Speculations, suppositions, and probabilities, no matter how strong, are not sufficient to overcome the presumption of innocence_ Our law autho-
rizes the State to inflict punishment for criminal acts only when the State’s evidence overcomes the presumption of innocence and establishes the defendant’s guilt beyond a reasonable doubt.”
Ex parte Clark, 591 So.2d 23, 25, 29 (Ala.1991).
“ ‘ “In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but *120 guilt, but whether a jury might reasonably so conclude.” ’ ”
Seales v. State, 581 So.2d 1192, 1192-93 (Ala.1991). Here the circumstantial evidence presented by the State, in the opinion of this Court, was sufficient for the jury to reasonably exclude every reasonable hypothesis except that of guilt. Consequently, the case was properly submitted to the jury for its determination.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. The opinion in Ex parte Jackson, 598 So.2d 895 (Ala.1992), modified the prior Jackson opinion by providing a procedure for the filing of the appellant’s brief in the appellate court. It did not change the procedure for extending the time for filing a motion for new trial and for obtaining the reporter’s transcript of the record.