BOWEN, Presiding Judge.
Willie Ben Alford, the appellant, was convicted of possession of marijuana in the first degree and was sentenced to 16 years’ imprisonment. He was also convicted of three instances of the unlawful distribution of cocaine and sentenced to life imprisonment in each case. On this appeal from those convictions, the appellant contends that his trial was rendered fundamentally unfair when a State prosecutor informed him that no “buy money” was discovered on the appellant at the time of the arrest.
The State presented evidence that on three different occasions, Gary Graves, an employee of the Montgomery County District Attorney’s Office assigned to the Montgomery Operation on Drugs Task Force, provided money to Allen Stravrakis, an informant, to purchase drugs from the appellant. Graves testified, without objection, that in executing the search warrant at the residence of the appellant on November 21, 1991, “some U.S. currency” was found on the appellant. R. 19. On direct examination of Graves the following occurred:
“Q. [assistant district attorney Will Gun-ter] Corporal Graves, the currency you found on Mr. Alford during the search warrant was any of that money your money that — the buy money?
“A. Yes, sir, it was.
“Q. Do you have that money with you right now?
“A. No, sir; it’s locked up in a safe.
*405 “Q. Did you just forget to bring it over here today?
“MR. CALLAHAM [defense counsel]: Your Honor, I’m going to object. I move to strike what he has testified to if they don’t have the evidence. I object to it in addition because I was told before I made my opening statement that there was no buy money.
“THE COURT: Any discrepancy can be explained; and I don’t think there’s anything—
“MR. CALLAHAM: I can see that. I don’t think I was misled by the District Attorney’s Office; I think it was a mistake. He hadn’t gotten with his witness. But I’m going to object now to [it] going in because they say they don’t have it here. “THE COURT: Well, it can’t go in if they don’t have it.
“MR. GUNTER: Your Honor, I wanted to explain its unavailability right now and ask leave to recall Mr. Graves later.
“THE COURT: I’ll permit it.
“Q. You told me — What did you tell me this morning about the money? You first told me you weren’t sure?
“A. I wasn’t sure; that’s right, until I read the statement here.
“Q. All right.
“A. Then I asked Mr. Alford several times in the statement that he gave me how did my money end up in his pocket.
“Q. And you are a witness in some other cases in this courtroom today; are you not?
“A. Yes, sir, I am.” R. 22-24.
Defense counsel then cross-examined Graves about his use of the informant and how much money the informant was paid and how much money he was given with which to purchase illegal drugs. On cross-examination, Graves testified without objection: “I asked [the appellant] about our money that we found on him and he lied about that also.” R. 32.
The State’s next witness was the informant, Allen Stavrakis, who testified that Graves gave him the money with which to purchase the drugs. R. 41, 43. He testified that on November 19,1991, he purchased $60 worth of cocaine from the appellant (R. 41) on one occasion, and $50 worth of cocaine on a different occasion on that same day (R. 43). On November 21, the informant purchased $5 worth of cocaine from the appellant. R. 43-44.
The State presented additional testimony, without objection, that cocaine was seized from the appellant’s residence. Only after the State’s forensic expert had identified the substances as cocaine, did defense counsel make further objection regarding the issue now raised on appeal. R. 67.
That objection occurred after the State’s expert testified on cross-examination that “all of [the substance found] was crack except the charred residue, and this is consistent with that of crack.” R. 66. At that time, defense counsel requested a bench conference at which he made a motion for a mistrial without reciting any grounds. R. 67. Outside the presence of the jury, defense counsel complained that in response, to his discovery request, the district attorney’s office had supplied him with a “discovery packet ... [that] indicated that the only cocaine found inside the residence [was cocaine residue]” and not crack cocaine. R. 68. The trial court overruled the motion for mistrial: “He can’t furnish you with something he doesn’t have. I think that would to the weight as far as if you want to comment about it.” R. 69.
Defense counsel then cross-examined the State’s expert about the official report from Forensic Sciences.
Corporal Graves was recalled and testified concerning the money he gave the informant to purchase the drugs. He testified without objection that “we found two of our $20 bills” on the appellant. R. 74. When the State offered the two $20 bill into evidence, defense counsel stated: “I object and ask for a mistrial again.[1] The discovery that I got was completely misleading.” R. 75 (footnote add *406 ed). The trial judge responded: “I’ve ruled. I’ll admit it.” R. 75. The State then rested its ease. Defense counsel, outside the presence of the jury, then stated:
“Your honor, on March 26, 1992, I filed notice of appearance and request for discovery [2] ... And in that request I asked for documents and tangible objects as required by Rule 16-1, which would be any documents or tangible evidence that they intended to introduce at the defendant’s trial, and I think that would have covered the marked buy money. She was never sure whether they had buy money. I talked to Roianne Frith several times about the buy money. Just before we started the trial I was told that they did not have buy money. In my opening I told the jury that the strongest part of our case was that they found no buy money.[3] Well, they did have buy money and they did introduce it into evidence. I don’t think that was done intentionally by the District Attorney’s Office, I think it was a mistake; but it hurt real bad.” R. 75-76.
Defense counsel then argued that the discovery packet he was given included no mention of the crack cocaine.
“I was given a discovery packet which lists everything except the rock cocaine. And that was the strong part of our case, that they didn’t find any rock cocaine and they didn’t find any buy money. They did have rock cocaine and they did have buy money. I just didn’t find out about it until after I had done my opening. I’m entitled under the Rules of Discovery to that information. I asked for that information. I did everything I was supposed to do. And it’s not a lack of giving the information; they misled me about the scientific tests. What they have done is they have given me information that says there was no crack cocaine found when, indeed, there was crack cocaine found. They misled me about the buy money.” R. 77.
Assistant District Attorney Gunter then explained that he “wasn’t given this case until 7:30 this morning.” R. 78. Assistant District Attorney Frith was called to the courtroom and the following occurred:
“THE COURT: All right, Mr. Callaham, do you want to relate to Ms. Frith what you quoted her as doing wrong?
“MR. CALLAHAM: I received your packet of discovery. What has happened is that this packet talks about the only cocaine being cocaine residue that was found on a juice can; and what has happened is that they have now introduced evidence of crack cocaine.
“MS. FRITH: What is that, Clay? Right back here there is the other one.
“MR. CALLAHAM: Okay; all right.
“THE COURT: Anything else, Mr. Calla-ham?
“MR. CALLAHAM: No; that does it.
“THE COURT: I overrule your motion again.” R. 78-79.
Defense counsel did not pursue the matter of the “buy money” with prosecutor Frith.
The appellant testified that Stavrakis gave him a car radio to “hold for him” for “half an ounce of weed.” R. 82. About two days later Stavrakis returned and gave the appellant two $20 bills and got his radio back. R. 82. The appellant admitted selling marijuana to Stavrakis but claimed that he never sold him any cocaine. R. 83. The appellant also admitted that Stavrakis gave him two $20 bills and that those two bills were found on him. R. 87.
On rebuttal, the State recalled Officer Graves as a witness in an effort to impeach the appellant. Graves testified that he took a statement from the appellant after his arrest which he tape-recorded. In that statement the appellant maintained that he got *407 the money found on his person from “working” and did not mention the radio to the police.
Defense counsel cannot complain that one prosecutor misled him by telling him there was no buy money when the existence of buy money was disclosed in the appellant’s statement to the arresting officer. The alleged assurance from one prosecutor that there was no “buy money” conflicted with Officer Graves’s statements to the appellant in taking the appellant’s statement and should have alerted defense counsel to the possibility of error.
Defense counsel first objected to the admission of the “buy money” because the officer did not have it present when he first testified. R. 23. At that time there was no request for any mistrial on any ground. Only when the State offered the actual “buy money” into evidence, after there had been testimony presented to the jury that “buy money” had been found on the appellant, did defense counsel request a mistrial. The ground of that objection was that the discovery provided defense counsel was “completely misleading.” R. 75. That request for a mistrial was untimely. Menefee v. State, 592 So.2d 642, 647 (Ala.Cr.App.1991). See also Jackson v. State, 530 So.2d 900 (Ala.Cr.App.1988).
Contrary to the appellant’s allegations, he was not entitled to discover the information of whether the money found on the appellant at the time of his apprehension was “buy money.” Under Rule 16.1(c)(2) and (3), A.R.Crim.P., the appellant was only entitled to inspect and copy the actual currency taken from the appellant because it was a tangible object a portion of which the State intended to introduce at trial, and because it was obtained from or belonged to the appellant. From what appears in the record, the State did not breach any order of discovery issued by the trial court.
“Affirmative misrepresentation of, and deliberate deception by, the prosecutor cannot be tolerated and must be dealt with severely. The prosecutor can neither take unfair advantage of the defendant nor strike foul blows. While the prosecutor is under no duty to ‘draw a blue print for [the defendant] as to the State’s plan of prosecution,’ if he undertakes to do so, he may not deliberately mislead the defendant. ...
“Here, the evidence supports the trial judge’s implicit findings that there was no deliberate deception or misrepresentation by the prosecutor. Although it is clear that there was an obvious misunderstanding, this ease does not involve the prosecutor’s breach of his promise of future conduct.
“We view this issue as one akin to the prosecutor’s duty to disclose under Rule 18, AR.Cr.P.Temp. [now Rule 16, A.R.Crim.P.]. In such a case, ‘[t]he imposition of sanctions upon noncomplianee with a court’s discovery order is within the sound discretion of the trial court.’”
Leonard v. State, 551 So.2d 1143, 1151 (Ala.Cr.App.1989) (citations omitted).
Here, there is no allegation of deliberate deception on the part of any prosecutor. The trial court’s comment, “Any discrepancy can be explained; and I don’t think there’s anything — ” (R. 23), tends to indicate that the trial court had some knowledge of this matter. The trial court’s remark was interrupted by defense counsel who stated, “I don’t think I was misled by the District Attorney’s Office; I think it was a mistake” R. 23. When defense counsel had the opportunity to pursue this matter with prosecutor Frith, he neglected to do so.
Under these circumstances, while we in no way condone the conduct of the prosecutors connected with this case, we conclude that the trial court did not abuse its discretion in denying the request for a mistrial. “[A] motion [for mistrial] is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion.” Ex parte Jefferson, 473 So.2d 1110, 1114 (Ala.1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 300 (1986). “‘[W]e must ordinarily give great deference to the ... judge’s handling of the alleged misconduct during the trial. The ... judge is ordinarily in a much better position to understand the circumstances surrounding the alleged mis *408 conduct and to evaluate its impact.’ ” Wysinger v. State, 448 So.2d 435, 439 (Ala.Cr.App.1983).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. This was the first motion for a mistrial requested by defense counsel in connection with the "buy money.”

. The record contains no request for discovery filed on this date. The only discovery request appearing in the record is the "defendant's request for additional discovery” filed on April 2, 1992. CR. 9. In that request, the appellant "requests a photo copy of any marked or identifiable money which was taken from the Defendant. Specifically, Defendant wants to know if the money listed as #12 in the search warrant inventory was identified as 'buy money.' ” CR. 9. The record contains no ruling by the trial court on this request.

. The opening statement of defense counsel is not reported in the record.